119 P.3d 318 (2005)
Camile Hope COPPERNOLL, a minor child, through her Guardian and parents Karin and James Coppernoll; Geraldine A. King and Richard King, wife and husband; Russell G. Foster and Marilyn Foster, husband and wife; C.G. and M.G-P, two minor children, through their parent, K.G-P, Petitioners,
v.
Sam REED, in his official capacity as Secretary of State of the State Washington, Defendant/Respondent, and
Dr. Jeffrey B. Collins, on behalf of Washington State Medical Association, and Doctors for Sensible Lawsuit Reform, Intervenors/Respondent.
No. 76818-8.
Supreme Court of Washington, En Banc.
Argued June 30, 2005.
Decided September 8, 2005.
*319 John Budlong, Edmonds, Reed Philip Schifferman, Stritmatter Kessle Whelan Withey, Seattle, John Robert Connelly, Gordon Thomas Honeywell et al., Tacoma, for Camille Hope Coppernoll, et al.
Jeffrey Todd Even, Jay Douglas Geck, Maureen A. Hart, Olympia, for Sam Reed.
Mary H. Spillane, William Kastner & Gibbs, Seattle, for Jeffrey B. Collins.
Carol Sue Janes, Bennett Bigelow & Leedom PS, Seattle, for Amicus Curiae (Wash. Defense Trial Lawyers).
Tim M. Higgins, Winston & Cashatt, Bryan Patrick Harnetiaux, Debra Leigh Williams Stephens, Spokane, for Amicus Curiae (Wash. State Trial Lawyers Assoc.).
Judy Irene Massong, Peterson Young Putra et al., Seattle, for Other Parties (Marilyn Foster and Russekk G. Foster).
J.M. JOHNSON, J.
¶ 1 Petitioners seek reversal of a King County Superior Court order dismissing their action to enjoin the secretary of state from placing three sections of Initiative 330 (I-330) on the general election ballot. Petitioners argue that these sections would be unconstitutional if enacted, and thus exceed the scope of the legislative power under article II, section 1 of the Washington Constitution. We hold that I-330 does not exceed the scope of the legislative power and that the secretary of state must place it on the general election ballot. We express no opinion as to the general constitutionality of the initiative's challenged provisions.

I. FACTS AND PROCEDURES
¶ 2 In July 2004, Jeffrey Collins, M.D., on behalf of the Washington State Medical Association and Doctors for Sensible Lawsuit Reform filed with the secretary of state proposed I-330 to the legislature.[1] The attorney general's office prepared a ballot title, which the Washington State Trial Lawyers Association (WSTLA) subsequently challenged in Thurston County Superior Court. The statement of subject, concise description, and ballot summary that emerged from this legal challenge are as follows:
Statement of Subject . . .
[Initiative Measure No. 330 concerns] claims for personal injury or death arising from healthcare services.
Concise Description . . .
[This measure would] change laws governing claims for negligent healthcare, including restricting noneconomic damages to $350,000 (with exception), shortening time limits for filing cases, limiting repayments to insurers and limiting claimants' attorney fees.
Ballot Summary . . .
This measure would change healthcare liability laws by: limiting recovery for noneconomic damages; limiting attorney fees; requiring advance notice of lawsuits; shortening time for filing cases; expanding evidence of payment from other sources and eliminating subrogation for those sources; authorizing mandatory arbitration without trial; authorizing periodic payments of future damages and terminating those payments under certain circumstances; eliminating liability for other persons or *320 entities in some cases; and limiting damage recovery from multiple healthcare providers.
Br. of Intervenors/Resp't, App. A, Ex. 2 (Order Aug. 6, 2004) (alterations in original).
¶ 3 In August 2004, as the I-330 sponsors were about to commence signature gathering, Camille Coppernoll, Geraldine King, Richard King, Russell Foster, Marilyn Foster, C.G., and M.G.-P. (collectively petitioners[2]) filed an action in King County Superior Court against respondent secretary of state seeking declaratory and injunctive relief on the grounds that three sections of I-330 were unconstitutional and thus should not be placed on the November 2005 ballot. Initiative sponsor Jeffrey Collins, M.D., on behalf of the Washington State Medical Association and Doctors for Sensible Lawsuit Reform (collectively intervenor medical groups) intervened.
¶ 4 As is relevant here, the complaint challenged three of the twenty sections of I-330: sections 1, 2, and 4(2). Section 1 imposes a formula limiting recovery of noneconomic damages for personal injury or death in medical malpractice suits. "[I]n no action seeking damages for personal injury or death may a claimant recover a judgment for noneconomic damages exceeding an amount determined by multiplying 0.43 by the average annual wage and by the life expectancy of the person incurring noneconomic damages. . . ." Br. of Petitioners, App. 2, 2.
¶ 5 Section 2 imposes a cap on noneconomic damages (in addition to the limit in Section 1): "In any action or arbitration for damages for injury or death occurring as a result of health care or related services . . . the total combined civil liability for noneconomic damages for all health care professionals. . . shall not exceed three hundred fifty thousand dollars for each claimant. . . ." Id. at 2-3.
¶ 6 Section 4(2) limits attorneys' fees in cases involving medical injury or death resulting from healthcare or related services as summarized in the following schedule:
 40 percent of the first $50,000 recovered;
 33.3 percent of the next $50,000 recovered;
 25 percent of the next $500,000 recovered;
 15 percent of any amount recovered above $600,000.
Id. at 7.
¶ 7 By December 2004, the supporters of I-330 had gathered the requisite signatures for the initiative and filed them with the secretary of state. Accordingly, the secretary of state certified I-330 to the legislature for the 2005 session. During the session, the legislature did not adopt, reject, or propose an alternative to I-330. Thus, the initiative must appear on the ballot for the November 8, 2005 general election. See Const. art II, § 1(a).
¶ 8 In the trial court, petitioners moved for summary judgment on their claim for declaratory relief. They asserted that, if I-330 were enacted, (1) the limits on noneconomic damages in sections 1 and 2 would violate article I, section 21 of the Washington Constitution by unduly infringing on the right to trial by jury, and (2) the restrictions on attorney contingency fees in section 4(2) would violate separation of powers principles derived from article IV, section 1 of the Washington Constitution. They further alleged that because these sections would be unconstitutional if enacted, they exceed the scope of the legislative power under article II, section 1 of the Washington Constitution.[3]
*321 ¶ 9 Respondent secretary of state cross-moved for summary judgment and intervenor medical groups cross-moved to dismiss the complaint for lack of a justiciable controversy, standing, and ripeness, or in the alternative, on the grounds that the challenged provisions of I-330 did not exceed the legislative power and were in fact constitutional. The trial court denied the petitioners' motion for summary judgment and granted the intervenor medical groups' cross-motion to dismiss without explaining the grounds for dismissal. Petitioners successfully sought our discretionary review.

II. STANDARD OF REVIEW
¶ 10 We engage in the same inquiry as the trial court when reviewing an order of summary judgment; all facts and reasonable inferences are considered in a light most favorable to the nonmoving party, while all questions of law are reviewed de novo. Berger v. Sonneland, 144 Wash.2d 91, 26 P.3d 257 (2001). Additionally, we may sustain such an order on any basis supported by the record. LaMon v. Butler, 112 Wash.2d 193, 200-201, 770 P.2d 1027 (1989).
¶ 11 The trial court simultaneously considered both petitioners motion for summary judgment and the secretary of states and intervenor medical groups cross-motions. The material facts were undisputed and the trial court considered the pleadings submitted by all parties. Accordingly, we review the trial courts order of dismissal as a summary judgment and engage in the same inquiry as the trial court.

III. ANALYSIS
¶ 12 The initiative is the first power reserved by the people in the Washington Constitution. Const. art. 2, § 1(a). Adopted in 1911, the right of initiative is nearly as old as our constitution itself, deeply ingrained in our state's history, and widely revered as a powerful check and balance on the other branches of government. Accordingly, this potent vestige of our progressive era past must be vigilantly protected by our courts. See In re Estate of Thompson, 103 Wash.2d 292, 294-95, 692 P.2d 807 (1984) ("In interpreting the provisions of the constitution which preserve the right of initiative to the people, this court has consistently applied the rule that such provisions will be liberally construed to the end that the right of initiative be facilitated.").[4]
¶ 13 It has been a longstanding rule of our jurisprudence that we refrain from inquiring into the validity of a proposed law, including an initiative or referendum, before it has been enacted. Seattle Bldg. & Constr. Trades Coun. v. City of Seattle, 94 Wash.2d 740, 745, 620 P.2d 82 (1980) (citing State ex rel. O'Connell v. Kramer, 73 Wash.2d 85, 436 P.2d 786 (1968) and State ex rel. Griffiths v. Superior Court, 92 Wash. 44, 159 P. 101 (1916)). We have recognized two narrow exceptions to this general rule against preelection review. The availability of these exceptions depends upon the type of review sought.
¶ 14 Preelection challenges to statewide initiatives and referenda fit into three categories: "(1) the measure, if passed, would be substantively invalid because it conflicts with a federal or state constitutional . . . provision; (2) the procedural requirements for placing the measure on the ballot have not been met; and (3) the subject matter is not proper for direct legislation." James D. Gordon III & David B. Magleby, Preelection Judicial Review of Initiatives and Referendums, 64 NOTRE DAME L.REV. 298, 298 (1989).
¶ 15 The first type of challenge, substantive invalidity, is not allowed in this state because of the constitutional preeminence of the right of initiative. See, e.g., O'Connell, 73 Wash.2d 85, 436 P.2d 786 (1968); Maleng v. King County Corr. Guild, 150 Wash.2d 325, 76 P.3d 727 (2003); Philadelphia II v. Gregoire, 128 Wash.2d 707, 911 P.2d 389 (1996). *322 In further support of this rule, scholars have noted that substantive preelection review, where allowed in other states, "involves issuing an advisory opinion, violates ripeness requirements, undermines the policy of avoiding unnecessary constitutional questions, and constitutes unwarranted judicial interference with a legislative process." Gordon, supra at 298.
¶ 16 Because ballot measures are often used to express popular will and to send a message to elected representatives (regardless of potential subsequent invalidation of the measure), substantive preelection review may also unduly infringe on free speech values. Id. at 312. For example, after voter passage of Initiative 695 requiring $30 vehicle license tabs, it was ruled invalid by the trial court. A nearly identical measure was quickly passed by the legislature and signed by the governor before an appeal could be heard. See S.B. 6865, 56th Leg., 1st Sp. Sess. (Wash.2000) (now codified at RCW 46.16.0621). See also Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 11 P.3d 762, 27 P.3d 608 (2000) (affirming trial court's invalidation of Initiative 695).
¶ 17 Our courts have entertained preelection review of the second type of challenge, a ballot measure's noncompliance with procedural requirements, including challenges to the requisite number of signatures, timing of filing, and ballot titles.[5]See e.g., Sudduth v. Chapman, 88 Wash.2d 247, 558 P.2d 806, 559 P.2d 1351 (1977) (number of ballot signatures); In re Ballot Title for Initiative 333, 88 Wash.2d 192, 558 P.2d 248, 559 P.2d 562 (1977) (ballot title); and State v. Howell, 77 Wash. 651, 138 P. 286 (1914) (timing of filing). Procedural preelection challenges generally do not raise concerns regarding justiciability because the sole inquiry is whether the proper procedures have been followed in order to invoke the initiative process in the first instance. As previously noted, WSTLA challenged I-330's ballot title, concise description, and summary.[6] No further procedural defects are alleged here.
¶ 18 Finally, we have allowed limited preelection review of the third type of challenge, where the subject matter of the measure was not proper for direct legislation. These challenges usually address the more limited powers of initiatives under city or county charters, or enabling legislation. See, e.g., Maleng, 150 Wash.2d 325, 76 P.3d 727; Seattle Bldg. & Constr. Trades Council, 94 Wash.2d 740, 620 P.2d 82; Ruano v. Spellman, 81 Wash.2d 820, 505 P.2d 447 (1973); and Ford v. Logan, 79 Wash.2d 147, 483 P.2d 1247 (1971).
¶ 19 Because the people's legislative power is coextensive with the legislature's, on only one occasion have we considered a challenge to a statewide initiative, where the relevant challenge was that the initiative measure exceeded the scope of the legislative power under article II, section 1 of the Washington Constitution. Philadelphia II, 128 Wash.2d This inquiry was expressly held to be separate and distinct from a challenge to the measure's substantive validity. "[W]hile a court may decide whether the initiative is authorized by article II, section 1, of the state constitution, it may not rule on the constitutional validity of a proposed initiative." Id. at 717, 911 P.2d 389. Subject matter challenges do not raise concerns regarding justiciability because postelection events will not further sharpen the issue (i.e., the subject of the proposed measure is either proper for direct legislation or it is not).

A. Justiciability

¶ 20 Petitioners argue that three sections of I-330 would be unconstitutional if enacted, and thus I-330 exceeds the scope of the legislative power under article II, of the Washington Constitution. Intervenor medical groups assert, as a threshold matter, that *323 petitioners fail to present a justiciable claim. As demonstrated by the foregoing analysis, the justiciability of any particular preelection claim is largely a function of the type of review sought.
¶ 21 Here the parties disagree as to the category of preelection review sought by petitioners. Petitioners cast their unconstitutionality claim as a challenge to whether I-330 is validly within the legislative power, whereas respondent secretary of state and intervenor medical groups label the claim as a challenge to the substantive validity of I-330.
¶ 22 Justiciability is a threshold inquiry and must be answered in the affirmative before a court may address the merits of a litigant's claim. See To-Ro Trade Shows v. Collins, 144 Wash.2d 403, 411, 27 P.3d 1149 (2001). Accordingly, we initially determine if petitioners' claim is justiciable. This court has long held that to invoke the Uniform Declaratory Judgments Act, chapter 7.24 RCW (UDJA), a plaintiff must establish:
"(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."
Id. See also Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973).
¶ 23 If petitioners' claim is for substantive review of I-330, it is clear that the standard justiciability requirements are not metthere is no actual, present, or existing dispute. First, the initiative may be rejected by voters. Second, even assuming that I-330 will be approved by the voters,[7] there is no guarantee that petitioners will suffer any injury. Each of petitioners' claims against healthcare providers may settle, as is already the case with Russell and Marilyn Foster. See supra note 2. In addition, if their respective cases proceed to trial, juries may return defense verdicts or juries may award noneconomic damages that do not exceed the limits in I-330. Thus, petitioners' current challenges against I-330, to the extent that they are substantive, are merely "dormant, hypothetical, [and] speculative."[8] The UDJA does not allow such a challenge. However, if the preelection review sought by petitioners is actually a challenge to the subject matter of the initiative, their challenge may still be justiciable.

B. The Legislative Power under Article II, Section 1 of the Washington Constitution

¶ 24 As previously indicated, we generally do not entertain preelection review of initiatives but maintain a prudential exception for subject matter challenges. This exception was first articulated in a case dealing with a county initiative, Ford, 79 Wash.2d 147, 483 P.2d 1247, and later applied to a statewide initiative in Philadelphia II, 128 Wash.2d 707, 911 P.2d 389. As previously noted, Philadelphia II is the only case in this court holding an initiative outside the scope of the state legislative power.
¶ 25 In Philadelphia II, a citizens' group filed an initiative that sought to "establish in the United States `direct democracy' by means of a federal, nationwide initiative process to complement the current congressional system, and ultimately to call a world meeting where representatives from participating countries will discuss global issues." Id. at 710, 911 P.2d 389. We were asked to determine whether this initiative exceeded the scope of article II, section 1 of the Washington Constitution. We concluded that while the ambitious goals of the initiative may be laudable, it simply was not within Washington's *324 legislative power to enact federal law. Id. at 720, 911 P.2d 389.
¶ 26 In Philadelphia II, we used a two part test to determine whether the initiative exceeded the legislative power. "[I]n order to be a valid initiative, [an initiative] must be legislative in nature and enact a law that is within the state's power to enact." Id. at 719, 911 P.2d 389. See also Ford, 79 Wash.2d at 154-55, 483 P.2d 1247 ("It is clear from . . . [Art. II, Sec. 1] that the initiative process, as a means by which the people can exercise directly the legislative authority to enact bills and laws, is limited in scope to subject matter which is legislative in nature."). We looked at the "fundamental and overriding purpose" of the initiative, rather than mere "incidental[s]" to the overriding purpose. Philadelphia II, 128 Wash.2d at 719, 911 P.2d 389. We concluded that, although some of the incidentals were legislative in nature, the overriding purpose was to enact federal law. Because enacting federal law was unquestionably beyond the scope of the state legislative power, we dismissed the action.
¶ 27 Notably, petitioners here do not argue that sections 1, 2, and 4(2) of I-330 are not legislative in nature. Petitioners instead argue that these sections are unconstitutional and accordingly exceed the legislative power as a matter of law. However, this argument directly contradicts the narrow exception that we created in Philadelphia II. "[W]hile a court may decide whether the initiative is authorized by article II, section 1, of the state constitution, it may not rule on the constitutional validity of a proposed initiative" Id. at 717, 911 P.2d 389.
¶ 28 Petitioners rely on several cases to argue that I-330's limits on noneconomic damages and contingency fees are unconstitutional. Specifically, petitioners argue that the limits on noneconomic damages in sections 1 and 2 would violate article I, section 21 of the Washington Constitution by unduly infringing on the right to trial by jury. For this assertion, petitioners rely on Sofie v. Fibreboard Corp., 112 Wash.2d 636, 771 P.2d 711, 780 P.2d 260 (1989) and Moody v. United States, 112 Wash.2d 690, 773 P.2d 67 (1989).
¶ 29 Petitioners similarly argue that the restriction on attorney fees in section 4(2) violates separation of powers principles derived from article IV, section 1 of the Washington Constitution. They cite several of our decisions to support their view that section 4's regulation of attorney contingent fees is a matter within the exclusive authority of the judiciary and this court specifically. See Brief of Petitioners at 2 (citing Wash. State Bar Ass'n v. State, 125 Wash.2d 901, 890 P.2d 1047 (1995); City of Seattle v. Ratliff, 100 Wash.2d 212, 215-16, 667 P.2d 630 (1983); In re Disciplinary Proceeding Against Brothers, 149 Wash.2d 575, 582, 70 P.3d 940 (2003); Holmes v. Loveless, 122 Wash.App. 470, 94 P.3d 338 (2004); Kommavongsa v. Haskell, 149 Wash.2d 288, 311-12, 67 P.3d 1068 (2003)).
¶ 30 Petitioners' reliance on this precedent applying other sections of our state's constitution to other laws is misguided. We carefully distinguish between review of initiatives for general constitutionality and review for being beyond the legislative power of article II, section 1 of the Washington Constitution. In adherence to our prior decisions, we therefore restrict analysis of I-330 to determining if its "fundamental and overriding purpose" is within the state's power to enact. We determine that it is.
¶ 31 I-330 does not purport to effectuate a federal law; amend the U.S. or Washington Constitution; or create any other type of law outside the state's legislative power. I-330 is plainly legislative in nature and concerns a general subject matter within the legislative authority of the people. Neither the people nor the legislature is entirely without authority to enact laws relating to causes of action or the practice of law. The fact that this court has addressed a subject in a prior case does not prevent the people or the legislature from enacting measures to test the bounds or continued applicability of a prior judicial decision.
¶ 32 In making this observation, we do not hold that the provisions of I-330 limiting noneconomic damages would surely withstand a constitutional challenge. Rather, because the state undeniably possesses the *325 power to alter or even eliminate causes of action, such exercise is within the state's legislative power.
¶ 33 I-330's regulation of contingency fees is also within the state's legislative power. In certain instances the state may regulate the practice of law, including fees. See e.g., RCW 4.24.005 (mandating how a judge shall determine the reasonableness of attorneys' fees in tort actions); RCW 51.52.120 (limiting attorneys' fees in representing a worker before the Industrial Insurance Department). No parade of cases exemplifying instances in which such power was held unconstitutionally utilized can usurp the state's underlying power to regulate the practice of law in certain carefully designated domains. Whether I-330 may violate one of the limitations, such as this court's power to regulate the bar, is a constitutional inquiry, and one which we refuse to engage in here.
¶ 34 Accepting petitioners' interpretation of Philadelphia II would eliminate our rule against preelection review and open the floodgates to preelection challenges of nearly any proposed initiative. Not only would this infringe upon the constitutional rights of the people, but it would needlessly inject our courts into a political dispute that is time sensitive. Under petitioners' theory, any proposed legislation that could be potentially unconstitutional would operate as an amendment to the constitution, which is beyond the legislative power. See Ford, 79 Wash.2d at 156, 483 P.2d 1247 (1971) ("the initiative power set forth in Const. Art. 2 does not include the power to directly amend or repeal the constitution itself."); accord Amalgamated Transit, 142 Wash.2d at 204, 11 P.3d 762. Br. of Petitioners at 8. Such an argument could undoubtedly be made for some (many) of the hundreds of bills considered by the legislature every session. We do not substantively review the legislature's bills before enactment, and will not do so with the people's right of direct legislation.
¶ 35 Finally, the instant challenge is particularly troublesome because it challenges only three of the twenty sections contained in I-330. In essence, petitioners are requesting that this court edit the initiative. Doing so would raise obvious questions whether the newly-edited initiative remains true to the intent of those who signed the proposed initiative to qualify it for certification to the legislature.

IV. CONCLUSION
¶ 36 Preelection review of an initiative is appropriate only when it is clear that an initiative exceeds the scope of the broad legislative power under article II, section 1. It is abundantly clear that here petitioners' claim as to the scope of the legislative power is a pretext for a challenge to the possible constitutionality of several sections of I-330. Because petitioners offer no theory under which I-330 exceeds the legislative power, other than this allegation of some sections unconstitutionality, petitioners' claims are not justiciable. While some sections of I-330 may or may not ultimately be held unconstitutional, I-330 does not exceed the scope of the legislative power. If Washington voters adopt I-330, petitioners may then bring a facial or as-applied challenge in an appropriate case.
¶ 37 Affirmed.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS and FAIRHURST, JJ.
NOTES
[1] Our state constitution authorizes initiatives to the people and initiatives to the legislature. Const. art II, § 1(a). The former is placed directly on the ballot. Id. The latter may be enacted by the legislature, or the legislature may decline to act, in which case it will be placed on the ballot. Id. The legislature may also enact an alternative to the initiative, in which case both the initiative and the legislative alternative are placed on the ballot. Id.
[2] Petitioners assert that the enactment of I-330 could affect their ability to recover in their separate and unrelated claims against healthcare providers. Camille Coppernoll is a minor who suffered birth asphyxia from purported midwifery malpractice. She is suing by and through her parents. Geraldine King's lung cancer was rendered incurable due to her doctor's alleged failure to timely diagnose and treat the condition. C.G. and M.G.-P are minors who claim they were abused multiple times by their foster care provider. They are suing by and through their parent K.G.-P. Unlike the other petitioners, however, C.G. and M.G.-P do not currently have a lawsuit pending, and it is not clear that their claim is against healthcare providers. Russell and Marilyn Foster have already settled their underlying medical malpractice action.
[3] Const. Art. II, § 1 provides:

[T]he legislative authority of the state of Washington shall be vested in the legislature . . . but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature. . . . same at the polls, independent of the legislature . . . .
[4] The principle that statutes are to be construed to "facilitate," rather than frustrate, the right of initiative derives from the plain language of the Washington Constitution: "This section is self-executing, but legislation may be enacted especially to facilitate its operation." Const. art. II, § 1(d).
[5] Appellate review of ballot titles no longer occurs because the statutory scheme has been amended to prohibit any review beyond the superior court. See RCW 29A.72.080 ("The decision of the superior court shall be final."). This reflects the policy of the constitutional limitation on legislation quoted supra note 4.
[6] If the substance of the initiative were changed in court, there is a significant possibility that the title would no longer accurately state the subject and/or provide a concise description. See RCW 29A.72.050.
[7] Since 1914, approximately one half of certified initiatives have been approved by the voters. See Secretary of State, SUMMARY: STATE INITIATIVES & REFERENDUMS 1914-2004, available at http://www.sec state.wa.gov/el ections/initiatives/statisticssummary.aspx.
[8] The status of petitioners' underlying claims against healthcare providers reinforces this conclusion. C.G. and M.G-P. have not commenced an action against medical practitioners and may never do so.