ALASKANS FOR EFFICIENT GOVERN-
MENT, INC., an Alaskan non-profit cor-
poration, and Karen Bretz, Appellants,

v.

STATE of Alaska, Loren Leman,
Lieutenant Governor,
Appellee.

No. S–11916.

Supreme Court of Alaska.

Feb. 23, 2007.

Kenneth P. Jacobus, P.C., Anchorage, for
Appellants.

Brenda B. Page, Assistant Attorney Gen-
eral, Anchorage, and David W. Márquez, At-
torney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

Alaskans for Efficient Government, an Alaskan nonprofit corporation, submitted Initiative Petition 03TMLT for certification by the lieutenant governor. The initiative included a section requiring a supermajority vote for the legislature to pass tax-related bills. The lieutenant governor declined to certify the proposed initiative, ruling that it failed to comply with constitutional provisions governing the initiative process. The question presented in this appeal is whether the initiative could properly be rejected before being voted on and enacted. Alaska law usually requires an initiative to be enacted before its provisions become subject to challenge but allows a pre-election challenge if the initiative conflicts with a constitutional provision that limits the initiative process. Here, we conclude that the initiative's supermajority requirement conflicts with article II, section 14 of the Alaska Constitution, which requires bills to be enacted by a majority vote. Since article XI, section 1 of the Alaska Constitution does not allow an initiative to amend a constitutional requirement, we hold that the initiative was properly rejected for violating constitutional restrictions on the initiative process.

## II. FACTS AND PROCEEDINGS

In 2003 Karen Bretz, an Alaska voter and organizer of a non-profit corporation called Alaskans for Efficient Government (AFEG), filed a petition that proposed a ballot initiative designed to curb new taxes. The initiative proposed: (1) to require a three-fourths (seventy-five percent) vote by the legislature (or a majority vote by the electorate) to enact or increase taxes; (2) to allow municipalities to use initiatives for limiting local taxes; and

1. For convenience we will refer to Bretz and AFEG collectively as AFEG.

2. Since the issues on appeal do not require us to consider the initiative petition's remaining sec-

(3) to prohibit taxes on real estate transfers. After consulting with the Department of Law, the lieutenant governor rejected the petition, notifying Bretz that the department had determined that the proposal "does not comply with the constitutional and statutory provisions governing the use of the initiative."

Bretz and AFEG [1] appealed to the superior court, claiming that the proposed initiative dealt with a proper subject and should have been certified. The parties filed cross-motions for summary judgment; their dispute centered on the validity of the proposed initiative's first section—its supermajority voting requirement:

*Section 1. Limitation on State Taxes.* No new state taxes may be imposed, nor may existing rates on existing taxes be increased, except as follows:

(1) Upon the affirmative vote of 75% of the members of each house of the Alaska Legislature,

(2) Upon the affirmative vote of a majority of those voters of the State of Alaska voting on this question at a regular or special election, or

(3) If necessary to comply with the terms of state bonded indebtedness existing as of the effective date of this Act.[2]

The state maintained that the proposed initiative's call for a supermajority vote would violate the Alaska Constitution, which authorizes the legislature to enact most laws by a simple majority vote. Contending that approval of the supermajority requirement would effectively amend the constitution—a change that cannot be made by the initiative process—the state reasoned that AFEG's initiative was properly rejected. AFEG in turn defended the initiative, insisting that it merely proposed to enact a law, not a constitutional amendment. Because the proposed initiative was not clearly unconstitutional, AFEG argued, it could only be challenged after

tions, we do not set them out as part of this opinion. For ease of reference, however, the initiative's full text is included as an appendix to the opinion.

being placed on the ballot and approved by the voters.

The superior court granted summary judgment to the state. In the court's view, article II, section 14 of the Alaska Constitution, which allows the legislature to enact bills by majority vote, could only be changed by a constitutional amendment. Since an initiative cannot amend the constitution, the court concluded, AFEG's initiative could not properly be used to enact a supermajority voting requirement.

AFEG appeals.

## III. STANDARD OF REVIEW

■■■ We review an award of summary judgment independently and will affirm if the evidence, when viewed in the light most favorable to the non-moving party, "fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[3] We likewise review constitutional questions independently and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

## IV. DISCUSSION

### A. Pre–Election Review of Supermajority Requirement

■■■ We have long recognized that when initiative petitions meet formal requirements for filing, the laws they propose to adopt are ordinarily not subject to immediate challenge: "The general rule is that a court should not determine the constitutionality of an initiative unless and until it is enacted."[5] The rule against pre-election review is a prudential one, steeped in traditional policies recognizing the need to avoid unnecessary litigation, to uphold the people's right to initiate laws directly, and to check the power of individual officials to keep the electorate's voice from being heard.[6] But this bar

against pre-election review has never been absolute:

> There are two exceptions to this [general rule]. First, where the initiative is challenged on the basis that it does not comply with the state constitutional and statutory provisions regulating initiatives, courts are empowered to conduct pre-election review. Second, courts are also empowered to conduct pre-election review of initiatives where the initiative is clearly unconstitutional or clearly unlawful.[7]

■■■ AFEG argues that its proposed initiative should have avoided review and been placed on the ballot because it is not "clearly unconstitutional"[8] as required under the second exception: "The case at bench involves a claim that the proposed initiative is in conflict with the Constitution of Alaska and, accordingly, is an attempt to amend it. Judicial review of Constitutional challenges, however, should not be conducted until after the passage of the initiative by the voters, if in fact it is passed."

But the state responds that the initiative was properly rejected under the first exception—not because it might be unconstitutional if enacted but rather because enacting an initiative on a subject that can only be changed by constitutional amendment fails to comply with constitutional provisions regulating the initiative process.

The state's argument starts from the premise that the Alaska Constitution does not permit constitutional amendments to be enacted by initiative. As this court recognized soon after statehood in *Starr v. Hagglund,*

> [Article XIII of the Alaska Constitution] provides two methods of amending the constitution: (1) by a constitutional convention, followed by ratification of the proposed amendment by the people, and (2) by a proposal that has obtained a two-

---

3.  *Sonneman v. State,* 969 P.2d 632, 635 (Alaska 1998) (quoting *Dayhoff v. Temsco Helicopters, Inc.,* 772 P.2d 1085, 1086 (Alaska 1989)).

4.  *Sonneman,* 969 P.2d at 636 (citing *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

5.  *State v. Trust the People,* 113 P.3d 613, 614 n. 1 (Alaska 2005).

6.  *Id.* at 628–29.

7.  *Id.* at 614 n. 1.

8.  *Kodiak Island Borough v. Mahoney,* 71 P.3d 896, 900 (Alaska 2003).

thirds vote of each house of the legislature, and is adopted by the people by majority vote at a statewide election.[9]

As we further recognized in *Starr*, article XIII necessarily limits the scope of the initiative process: "The initiative may be used only to enact laws, and not for the purpose of constitutional amendment." [10]

Building on the premise that article XIII forbids the initiative from being used to amend the constitution, the state's argument turns to article II, section 14 of the Alaska Constitution. This provision authorizes the legislature to establish procedures for enacting laws and specifies that enacting a law generally requires a majority vote of both houses:

> The legislature shall establish the procedure for enactment of bills into law. No bill may become law unless it has passed three readings in each house on three separate days, except that any bill may be advanced from second to third reading on the same day by concurrence of three-fourths of the house considering it. *No bill may become law without an affirmative vote of a majority of the membership of each house.* The yeas and nays on final passage shall be entered in the journal.[11]

In the state's view, the majority-vote clause of article II, section 14, restricts the use of an initiative by establishing that, except when otherwise provided in the constitution, a majority vote of both houses is the exclusive method for enacting a bill. Under this view, since a majority vote is a constitutional requirement and, as such, under article XIII, is not subject to change by initiative, a proposal to adopt a supermajority vote by initiative is barred because it conflicts with constitutional provisions that place the topic

off limits to the initiative process. As the state puts it:

> The Alaska Constitution requires only a majority vote of each house of the legislature to enact legislation. The measure proposed by the AFEG initiative, however, would establish new, additional requirements for enactment of taxation legislation. Specifically, the proposed measure would require a 75 percent majority vote of both houses of the Alaska legislature, or approval of a majority of the electorate, to enact legislation that would impose or increase state taxes. Such a fundamental change to the constitutional requirements for enactment of legislation constitutes an amendment to the Alaska Constitution. Under the Alaskan constitutional restrictions on initiatives, the initiative process cannot be used to amend the constitution. Accordingly, the lieutenant governor properly denied certification of the application.

■ Although AFEG concedes that the initiative process may not be used to amend the constitution, it disputes the state's reading of article II, section 14's majority-vote clause. AFEG reads article II, section 14 as simply establishing the minimum baseline for enacting a law. In AFEG's view, this baseline does not preclude a more stringent law requiring a supermajority vote.

But AFEG's interpretation of article II, section 14's majority-vote requirement is unpersuasive for several reasons.

Initially, we note that other states that have adopted supermajority or voter-approval requirements for enacting tax-related bills have almost always treated these requirements as constitutional matters. Indeed, of the states that have such requirements, it appears that all but one have implemented them as constitutional provisions.[12] More-

---

9. *Starr v. Hagglund,* 374 P.2d 316, 317 n. 2 (Alaska 1962).

10. *Id.; see also State v. Lewis,* 559 P.2d 630, 639 (Alaska 1977) ("The Alaska Constitution may not be amended by popular vote alone, without prior action by either the legislature or a constitutional convention."). Notably, article XI, section 1 empowers voters to "enact *laws* by the initiative" (emphasis added); no similar provision extends the initiative power to include constitutional amendments.

11. Alaska Const. art. II, § 14 (emphasis added).

12. *See* Ariz. Const. art. IX, § 22; Ark. Const. art. V, § 38; Cal. Const. art. XIIIA; Colo. Const. art. X, § 20; Del. Const. art. VIII, § 11; Fla. Const. art. VII, § 5; Ky. Const. § 36; La. Const. art. VII, § 2; Mich. Const. art. IX, § 25; Miss. Const. art. IV, § 70; Okla. Const. art. V, § 33; Or. Const. art. IV, § 25; S.D. Const. art. XI, § 13; *see also* Nev. Const. art. 4, § 18 (subsequently ruled invalid in part on state constitutional grounds not relevant here, *see Guinn v.*

over, the only state to adopt a supermajority requirement by ordinary legislation, Washington, later suspended it through a bill enacted by a majority vote, leaving Washington law where it started until its next legislative session.[13] The subject has also been viewed as a constitutional one in the federal arena. In 1995, when the House of Representatives passed a rule requiring supermajority votes for certain tax-related legislation,[14] members of the House immediately filed a constitutional challenge.[15] Although the challenge stalled for lack of standing[16] and ultimately became moot after the House determined that the rule could be waived by a majority,[17] Chief Judge Edwards of the D.C. Circuit expressed the view that the supermajority rule clearly violated the United States Constitution by "fundamentally alter[ing] the balance of power established by the Framers."[18]

Thus, to the extent that other jurisdictions have addressed the issue, the clear consensus appears to view supermajority voting requirements as implicating the kind of basic subject matter usually addressed by constitutional provision rather than legislation.

This view coincides with the Alaska Constitution's text and its traditional application by the Alaska legislature. As already mentioned, article II, section 14, of the Alaska Constitution directs the legislature to "establish the procedure for enactment of bills into law"; section 14 then goes on to specify that "[n]o bill may become law without an affirmative vote of a majority of the membership of each house." By giving the legislature the duty to adopt procedural rules for enacting law, while spelling out the precise vote required to enact bills as law, section 14 unmistakably signals that Alaska's constitutional framers intended the majority-voting provision to be a substantive requirement instead of a mere procedural rule.

AFEG insists that the negative phrasing of section 14's majority-vote clause—"[n]o bill may become law without an affirmative vote of a majority"—should be read as signaling the framers' intent to set a floor, not a ceiling: to require at least a majority vote while allowing laws imposing stricter requirements. If the framers had intended to require no more than a majority vote, AFEG contends, they would have drafted the clause to read: *"Any bill* may be enacted by an affirmative vote of the majority of the membership of each house."

But as the state correctly observes, other courts interpreting constitutional language have wisely refrained from attributing any automatic significance to the distinction between negative and positive phrasing.[19] Here, for example, had the framers said "any bill" rather than "no bill," AFEG's logic would just as readily compel the anomalous

---

*Legislature of State of Nevada,* 119 Nev. 277, 71 P.3d 1269, 1274–76 (2003), *decision clarified on denial of reh'g by* 119 Nev. 460, 76 P.3d 22 (2003), *cert. denied sub nom., Angle v. Guinn,* 541 U.S. 957, 124 S.Ct. 1662, 158 L.Ed.2d 392 (2004)).

13. *See* Wash. Rev.Code § 43.135.035.

14. *See* H.R. Res. 6, 104th Cong. (1995), 141 Cong. Rec. 462, 463 (1995) (adding subsections (c) and (d) to House Rule XXI(5)).

15. *Skaggs v. Carle,* 110 F.3d 831, 833 (D.C.Cir. 1997).

16. *Id.* at 837.

17. 141 Cong. Rec. 29463, 29476–77 (1995) (Speaker Pro Tempore rules that waiving supermajority rule only requires a majority).

18. *Skaggs,* 110 F.3d at 847 (Edwards, C.J., dissenting) (expressing view that House Rule XXXI(5)(c) violated the presentment clause of the Constitution, U.S. Const. art. I, § 7, cl. 2).

19. *See, e.g., Powell v. McCormack,* 395 U.S. 486, 538–39, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (recognizing that the U.S. Constitution's qualifications clause provides an exclusive list of qualifications for legislators, notwithstanding its negative phrasing); *Gerberding v. Munro,* 134 Wash.2d 188, 949 P.2d 1366, 1372–73 (1998) (Washington Supreme Court found that negative phrasing could still mean exclusivity of a provision and did not just mean a minimum); *Cathcart v. Meyer,* 88 P.3d 1050, 1070–71 (Wyo.2004) (not distinguishing between positive and negative phrasing, but noting that some other jurisdictions maintained the distinction); *cf. Mississippi County v. Green,* 200 Ark. 204, 138 S.W.2d 377, 379 (1940) ("Why fix [legislative qualifications, even in negative phrasing] in the first place if the makers of the constitution did not intend to fix all the qualifications required, and why fix only a part of them and leave it up to the legislators to fix other qualifications?").

conclusion that section 14 was meant to set a ceiling but not a floor—that a majority vote would be the maximum needed to enact any bill, but the legislature would remain free to specify a sub-majority vote as sufficient to enact laws dealing with specified subjects, as it saw fit.[20]

More important, the Alaska Constitution includes other provisions that undercut AFEG's contention that the framers intended section 14's majority-vote clause as a minimal standard. Alaska's constitutional framers, well aware of their ability to require more stringent voting requirements, included such requirements in the Alaska Constitution for laws dealing with various subjects. Examples can be found in the three-readings clause of article II, section 14;[21] the veto-override clause of article II, section 16;[22] the effective-date provisions of article II, section 18;[23] the impeachment standard set out in article II, section 20;[24] and the provisions governing budget reserve fund appropriations set out in article IX, section 17(c).[25] In our view, the superior court correctly recognized these examples as convincing evidence of the framers' intent to include provisions in the Alaska Constitution describing all in-

stances in which supermajority votes could be required to enact a bill.

To support its position that section 14's majority-vote clause just sets a minimal level for enacting bills into law, AFEG further cites numerous instances in which the legislature has adopted rules establishing voting requirements, including some rules requiring supermajority votes. Yet all of the cited rules either deal with non-substantive matters relating to internal legislative procedures or simply mirror substantive voting requirements expressly included in the Alaska Constitution.[26] AFEG identifies no rule that alters any provision of the constitution specifying the votes for enacting a bill; nor does AFEG cite any rule establishing a supermajority requirement for enacting any bill not already covered by supermajority requirements set out in the constitution's text. And AFEG points to no authority suggesting that the legislature, the Department of Law, or this court has ever interpreted the constitution to allow a rule of this sort.

Apparently, then, during the half-century since Alaska voters ratified our constitution, the majority-vote clause of article II, section

20. Moreover, as demonstrated by article II, section 12, it would be problematic to categorically reject this interpretation on the assumption that the framers would never have authorized any form of sub-majority voting requirement. In establishing various legislative procedures, section 12 provides, "[a] majority of the membership of each house constitutes a quorum to do business, *but a smaller number* may adjourn from day to day and may compel attendance of absent members." (Emphasis added.)

21. Alaska Const. art. II, § 14 states, in part, "[n]o bill may become law unless it has passed three readings in each house on three separate days, except that any bill may be advanced from second to third reading on the same day by concurrence of three-fourths of the house considering it."

22. Alaska Const. art. II, § 16 states "[b]ills to raise revenue and appropriation bills or items, although vetoed, become law by affirmative vote of three-fourths of the membership of the legislature."

23. Alaska Const. art. II, § 18 states "[l]aws passed by the legislature become effective ninety days after enactment. The legislature may, by concurrence of two-thirds of the membership of each house, provide for another effective date."

24. Alaska Const. art. II, § 20 states "[a]ll civil officers of the State are subject to impeachment by the legislature. Impeachment shall originate in the senate and must be approved by a two-thirds vote of its members."

25. Alaska Const. art. IX, § 17(c) states "[a]n appropriation from the budget reserve fund may be made for any public purpose upon affirmative vote of three-fourths of the members of each house of the legislature." We note additionally that article II, section 19 provides an example of a voter-approval requirement:

The legislature shall pass no local or special act if a general act can be made applicable. Whether a general act can be made applicable shall be subject to judicial determination. Local acts necessitating appropriations by a political subdivision may not become effective unless approved by a majority of the qualified voters voting thereon in the subdivision affected.

26. For instance, Legislative Rule 14 incorporates voting requirements of article II, sections 14, 16, and 18; Legislative Rule 39 relies on article II, section 14; and Legislative Rule 45 relies on article II, sections 15 and 16.

14 has uniformly been understood and applied as a substantive provision that sets both a floor and a ceiling: a requirement that bills be enacted by majority vote in all situations not covered by other requirements set out in the constitution.

So construed, the majority-vote requirement operates as a constitutionally based subject-matter restriction, prohibiting the enactment of any law that proposes to modify the majority-vote standard. Because the legislature itself cannot change this constitutional standard by enacting a law, and an initiative cannot enact laws that the legislature has no authority to enact,[27] it follows that article II, section 14 prevents an initiative from addressing the subject of the number of votes needed to enact a bill into law. Accordingly, we conclude that the lieutenant governor correctly reviewed the proposed initiative before it appeared on the ballot and properly rejected it at that stage for failing to comply with constitutional provisions regulating initiatives.[28]

### B. Severance

■ AFEG separately argues that the proposed initiative's severance clause authorizes us to remove the offending provisions from the measure and allow the rest to go forward. But the lieutenant governor rejected the entire initiative, not just its supermajority vote provision. In appealing this ruling to the superior court, AFEG failed to argue the severance issue. And its cursory briefing of the point on appeal to this court fails to provide a meaningful basis for appellate review. We have often emphasized that "[w]e will not ordinarily consider issues unless they were raised in the trial court." [29] Given AFEG's untimely and conclusory argument on the severance issue, we hold that AFEG has failed to preserve the point.

### V. CONCLUSION

For these reasons, we AFFIRM the superior court's judgment upholding the lieuten-

ant governor's rejection of Initiative Petition 03TMLT.

## APPENDIX

AN INITIATIVE REQUIRING 75% LEGISLATIVE MAJORITY OR VOTER APPROVAL TO IMPOSE NEW TAXES OR INCREASE EXISTING TAXES, PROHIBITING REAL ESTATE TRANSFER TAXES, AND PROVIDING FOR CERTAIN LOCAL OPTIONS

### BE IT ENACTED BY THE PEOPLE OF THE STATE OF ALASKA:

*Section 1. Limitation on State Taxes.* No new state taxes may be imposed, nor may existing rates on existing taxes be increased, except as follows:

(1) Upon the affirmative vote of 75% of the members of each house of the Alaska Legislature,

(2) Upon the affirmative vote of a majority of those voters of the State of Alaska voting on this question at a regular or special election, or

(3) If necessary to comply with the terms of state bonded indebtedness existing as of the effective date of this Act.

*Section 2. Local Option.* Any home rule or general law municipality, including cities, boroughs and unified municipalities, may enact or repeal ordinances through action by the governing body or through the initiative or referendum, which limit the imposition of new taxes or the increase of rates on existing taxes, repeal or reduce existing taxes, or determine maximum rates or amounts of any local tax.

*Section 3. Real Estate Transfer Taxes Prohibited.* Neither the State nor any municipality may impose any transfer taxes or

**27.** *See Starr,* 374 P.2d at 317 n. 2; *Lewis,* 559 P.2d at 639; Alaska Const. art. XI, § 1 (empowering voters to "enact laws by the initiative").

**28.** *Kodiak Island Borough,* 71 P.3d at 898; *see also Trust the People,* 113 P.3d at 628–29; *Brooks v. Wright,* 971 P.2d 1025, 1027 (Alaska 1999).

**29.** *Brooks v. Brooks,* 733 P.2d 1044, 1053 (Alaska 1987); *see also Moore v. State, Dep't of Natural Res.,* 992 P.2d 576, 577 n. 5 (Alaska 1999); *Jackson v. Nangle,* 677 P.2d 242, 251 n. 10 (Alaska 1984).

tax rates on transfers of real property by sale or lease. This section does not affect the right of the State or a municipality to impose taxes or royalties on the harvesting, extraction, or use of oil or gas, minerals, timber, and other natural resources which may be deemed to be part of the land.

*Section 4. Interpretation.* This Act shall be interpreted in the manner which reasonably restricts most the growth of government. The term "taxes", for the purposes of this act, shall include all taxes, permit fees, license fees and user fees.

*Section 5. Supersedes Conflicting Statutes, Ordinances, and Regulations.* This initiative supersedes all conflicting provisions of State statutes, local ordinances and State and local regulations and procedure, which provisions shall be of no further force or effect.

*Section 6. Applicability.* The provisions of this Act apply to all new taxes and all rate increases on existing taxes which are levied or imposed on or after January 1, 2004. If this date may not be used for legal reasons as determined by a court of competent jurisdiction, then the provisions of this Act apply to all new taxes and all rate increases on existing taxes which are levied or imposed on or after the effective date of this Act.

*Section 7. Severability.* The provisions of this Act are independent and severable, and if any provision of this Act, or the applicability of any provision to any person or circumstance, shall be held to be invalid by a court of competent jurisdiction, the remainder of this Act shall not be affected and shall be given effect to the fullest extent practicable.