[No. 80430-3. En Banc.]
Argued September 6, 2007.     Decided September 7, 2007.

FUTUREWISE ET AL., *Appellants*, v. SAM REED, *as Secretary of State, Respondent.*

*Eric D. "Knoll" Lowney*; *Keith P. Scully* (of *Futurewise*); and *Judith R. Krebs* (of *Service Employees International Union Healthcare 775NW*), for appellants.

*Robert M. McKenna, Attorney General,* and *Jeffrey T. Even* and *James K. Pharris, Deputy Solicitors General,* for respondent.

*Richard M. Stephens* and *Samuel A. Rodabough* on behalf of Voters Want More Choices, Tim D. Eyman, M.J. (Mike) Fagan, and Leo J. (Jack) Fagan, amici curiae.

¶1 ALEXANDER, C.J. — Futurewise and Service Employees International Union Healthcare 775NW seek to prohibit Secretary of State Sam Reed from placing Initiative 960 (I-960) on the November 2007 general election ballot. The King County Superior Court dismissed their action for injunctive and declaratory relief, and they appealed directly to this court. We affirm.

## FACTS

¶2 According to the ballot title's concise description, I-960 "would require two-thirds legislative approval or voter approval for tax increases, legislative approval of fee increases, certain published information on tax-increasing bills, and advisory votes on taxes enacted without voter approval." Appellants' Opening Br. at 5. More specifically, the initiative

> would require either a two-thirds vote in each house of the legislature or voter approval of all tax increases. New or increased fees would require prior legislative approval. An advisory vote would be required on any new or increased taxes enacted by the legislature without voter approval. The office of financial management would be required to publish cost information and information regarding legislators' voting records on bills imposing or increasing taxes or fees.

*Id.* at 5-6.

¶3 Appellants challenge only the initiative's voter and legislative approval requirements relating to tax increases. Under current law, the legislature may take action that "raises state revenue or requires revenue-neutral tax shifts" only if two-thirds of each house of the legislature approves, and then only if state expenditures in any fiscal year, including the new revenue, will not exceed statutory state expenditure limits. RCW 43.135.035(1). And if legislative action that "raises state revenue or requires revenue-neutral tax shifts" will result in expenditures in excess of the state expenditure limit, the action may not take effect until voted on by the people at a November general election. RCW 43.135.035(2)(a). The initiative would replace the phrase "raises state revenue or requires revenue-neutral tax shifts" with the phrase "raises taxes." Appellants' Opening Br., Ex. A at 7. "[R]aises taxes" means "any action or combination of actions by the legislature that increases state tax revenue deposited in any fund, budget, or account, regardless of whether the revenues are deposited into the general fund." *Id.* at 8. The initiative would thus make the act of "raising taxes" subject to the existing supermajority and voter approval provisions of RCW 43.135.035(1) and (2)(a). Also, the initiative would make all tax increases potentially subject to referendum by providing that, "[p]ursuant to the referendum power set forth in Article II, section 1(b) of the state Constitution, tax increases may be referred to the voters for their approval or rejection at an election." *Id.* at 7.

¶4 The initiative also would add a new section to chapter 43.135 RCW, stating that if legislative action raising taxes "is blocked from a public vote or is not referred to the people by a referendum petition found to be sufficient under RCW 29A.72.250, a measure for an advisory vote of the people is required and shall be placed on the next general election ballot under this act." *Id.* at 9. "[B]locked from a public vote" means "adding an emergency clause to a bill increasing taxes, bonding or contractually obligating taxes, or other-

wise preventing a referendum on a bill increasing taxes."
*Id.*[1]

¶5 The proponents of I-960 gathered the necessary number of signatures and submitted them to the secretary of state. On May 17, 2007, appellants filed a complaint against the secretary in King County Superior Court, seeking to enjoin him from placing the initiative on the November 2007 general election ballot on the ground that the challenged provisions were beyond the scope of the initiative power. Holding that the initiative was not properly subject to preelection review, the court granted summary judgment in favor of the secretary and dismissed the complaint. Appellants appealed directly to this court, and the matter was set for accelerated review.

## ANALYSIS

¶6 At issue is whether this court should review the validity of the challenged provisions of I-960 prior to the November 2007 general election. Preelection review of initiative measures is highly disfavored. *Coppernoll v. Reed*, 155 Wn.2d 290, 297, 119 P.3d 318 (2005). The fundamental reason is that "the right of initiative is nearly as old as our constitution itself, deeply ingrained in our state's history, and widely revered as a powerful check and balance on the other branches of government." *Id.* at 296-97. Given the preeminence of the initiative right, preelection challenges to the substantive validity of initiatives are particularly disallowed. *Id.* at 297. Such review, if engaged in, would involve the court in rendering advisory opinions, would violate ripeness requirements, would undermine the policy of avoiding unnecessary constitutional questions, and would constitute unwarranted judicial meddling with the legislative process. *Id.* at 298. Thus, preelection substantive challenges are not justiciable. *Id.* at 300-01. Fur-

---

[1] Legislative enactments declared to be necessary to the "immediate preservation of the public peace, health or safety" or for "support of the state government and its existing institutions" are not subject to referendum. CONST. art. II, § 1(b).

ther, substantive preelection review could unduly infringe on the citizens' right to freely express their views to their elected representatives. *Id.* at 298.

¶7 We will therefore consider only two types of challenges to an initiative prior to an election: that the initiative does not meet the procedural requirements for placement on the ballot (a claim that appellants do not make here) and that the subject matter of the initiative is beyond the people's initiative power. *Id.* at 298-99.[2] If an initiative otherwise meets procedural requirements, is legislative in nature, and its "fundamental and overriding purpose" is within the State's broad power to enact, it is not subject to preelection review. *Id.* at 302-03. That the law enacted by an initiative might be unconstitutional does not mean that it is beyond the power of the State to enact. *Id.* at 302-04. Therefore, a claim that an initiative would be unconstitutional if enacted is not subject to preelection review. *Id.*

¶8 Appellants challenge two aspects of I-960. First, they argue that the initiative's referendum provisions exceed the people's legislative power because they would effectively alter the state constitution's referendum process without complying with the procedures for amending the constitution. As discussed, under the initiative, any legislative action that "raises taxes" and results in excess expenditures would be automatically subject to referendum. And any tax increase that is shielded from referendum by an emergency clause or by the failure to qualify a referendum for the ballot would require an "advisory" vote of the people. These provisions, appellants urge, would have the effect of altering the constitutional referendum petition process by automatically requiring a referendum on any tax increase that results in excess expenditures and by establishing a system of "advisory" referendums.

---

[2] Only once has this court struck down a statewide initiative prior to election on the ground that its subject was beyond the initiative power. *See Philadelphia II v. Gregoire*, 128 Wn.2d 707, 719, 911 P.2d 389 (1996). *Philadelphia II* involved an initiative that sought to establish a federal initiative process, a matter clearly not subject to state legislation. *Id.* at 719-20.

¶9 Second, appellants challenge the supermajority requirement of I-960. They contend that, except in specifically enumerated instances, legislative bills require only a simple majority vote to pass. *See, e.g.*, CONST. art. II, § 22 (no bill shall become law except upon majority vote); CONST. art. II, § 24 (lottery may be established by 60 percent vote); CONST. art. II, § 41 (initiative may be amended within two years by two-thirds vote); CONST. art. III, § 12 (two-thirds vote required to override governor's veto); CONST. art. XXIII, § 1 (two-thirds vote required to propose constitutional amendment). Similar to their argument above, appellants contend that I-960 would have the unlawful "effect" of amending the constitution by establishing a supermajority requirement for tax increases not specified therein, thus placing the initiative beyond the people's legislative power.

¶10 Neither of appellants' challenges is subject to preelection review. I-960 does not purport to amend the constitution, whatever its practical "effect" may be. Appellants' argument is essentially that the initiative would be unconstitutional if enacted. We made clear in *Coppernoll* that we will not entertain such a claim prior to an election. The challengers there similarly argued that provisions of a proposed initiative were "unconstitutional and accordingly exceed[ed] the legislative power as a matter of law." *Coppernoll*, 155 Wn.2d at 302. Specifically, the challengers claimed that the initiative's limitations on noneconomic damages and contingency fees were beyond the initiative power because they invaded the jury's exclusive constitutional authority to determine damages and this court's exclusive constitutional authority to regulate the practice of law. But we rejected this argument, seeing it properly as not a subject matter challenge but a challenge to the constitutionality of the initiative. *Id.* at 303-04. We declined to adopt the notion that "any proposed legislation that could be potentially unconstitutional would operate as an amendment to the constitution [and therefore would be] beyond the legislative power." *Id.* at 304.

¶11 Just as the legislature is not entirely without authority to enact laws relating to causes of action and the

practice of law, *id*. at 303, so the legislature is not wholly without authority to enact laws relating to referendums and legislative procedures. *See* ch. 29A.72 RCW; CONST. art. II, § 1(d) (section governing initiatives and referendums "is self-executing, but legislation may be enacted especially to facilitate its operation"); CONST. art. II, § 9 (each house to determine the rules of its proceedings). Whether I-960 "may violate one of the [constitutional] limitations" in these areas "is a constitutional inquiry . . . which we refuse to engage in" prior to an election. *Coppernoll*, 155 Wn.2d at 304. While the initiative might not ultimately withstand a constitutional challenge (a proposition on which we offer no opinion here), it is not subject to preelection review on the ground that it would conflict with, and therefore improperly "amend," the constitution. *Id*.

¶12 Appellants rely mainly on *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 11 P.3d 762, 27 P.3d 608 (2000). *Amalgamated Transit* involved an initiative that, among other things, required voter approval of all tax increases except those approved as emergency measures by a two-thirds vote of the legislature. We held this provision unconstitutional mainly because it automatically called for a referendum on any tax increase, thus sidestepping the procedural requirements for referendums spelled out in the state constitution. *Id*. at 231-32. We further noted that the initiative was adopted in an improper manner because it effectively amended the constitutional referendum procedures, a matter for which "[t]he initiative process cannot be used." *Id*. at 232. But significantly, *Amalgamated Transit* was a *postelection* challenge. We subsequently made clear in *Coppernoll* that we will not entertain a preelection claim that an initiative is unconstitutional because it would effectively "amend" the constitution.

¶13 Appellants also rely on *Alaskans for Efficient Government, Inc. v. State*, 153 P.3d 296 (Alaska 2007). The challenge there was to a proposed initiative requiring a supermajority vote in the Alaska legislature or a majority vote of the people to pass any tax-related bills. The State

argued that the initiative was unlawful because the Alaska Constitution authorized the legislature to pass most laws by simple majority vote. The Alaska Supreme Court addressed a preelection challenge and affirmed the refusal of state officials to place the initiative on the ballot. In doing so, the court relied on the rule it had previously articulated allowing preelection challenges when " 'the initiative is challenged on the basis that it does not comply with the state constitutional and statutory provisions regulating initiatives.' " *Id.* at 298 (quoting *State v. Trust the People*, 113 P.3d 613, 614 n.1 (Alaska 2005)). The court treated the state constitution's majority vote requirement as a "constitutionally based subject-matter restriction, prohibiting the enactment of any law that proposes to modify the majority-vote standard." *Id.* at 302. The court thus held that state officials properly rejected the initiative at the preelection stage "for failing to comply with constitutional provisions regulating initiatives." *Id.*

¶14 But the notion—advanced by appellants and seemingly supported by *Alaskans for Efficient Government*—that constitutional limitations demark "subjects" on which the legislature is wholly disempowered to act is inconsistent with *Coppernoll*. As noted, if, as in this case, an initiative addresses areas within the broad legislative power, the question of whether the initiative ultimately will violate one of the constitutional limitations in these areas is a constitutional inquiry that we will not engage in before the voters have had their say. *Coppernoll*, 155 Wn.2d at 304.

¶15 We therefore hold that appellants' challenge to I-960 is not subject to preelection review.[3]

---

[3] Because we do not review the validity of I-960, we do not address whether the challenged portions of the initiative, if invalid, may be "severed" so that the valid provisions may be placed on the ballot. But the prospect of engaging in the "troublesome" task of editing the initiative while remaining true to the intent of those who signed the initiative petition is further reason to avoid preelection review. *See Coppernoll*, 155 Wn.2d at 304-05.

## CONCLUSION

¶16 Appellants challenge the constitutionality of I-960. Such a challenge is not subject to preelection review. While the disputed sections of the initiative may be subject to constitutional challenge, if passed, the initiative does not exceed the scope of the legislative power. The initiative therefore may be placed on the general election ballot.

¶17 Affirmed.

C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.