IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PROTECT WHATCOM KIDS, | No. 87627-9-I |
| Respondent, | |
| v. | DIVISION ONE |
| WHATCOM COUNTY, and STACY HENTHORN, in her official capacity, and WHATCOM COUNTY COUNCIL, | UNPUBLISHED OPINION |
| Respondents, | |
| TIM KOETJE, | |
| Appellant. | |

CHUNG, J. — Tim Koetje sponsored Initiative 2024-01 (the "Initiative") to repeal a proposition approved by voters in 2022 that removed a lid on property taxes and resulted in the Whatcom County Council's creation of a "Healthy Children's Fund." Protect Whatcom Kids, a political action committee, filed a lawsuit to prevent the Initiative from appearing on the Whatcom County ballot in November 2024. The trial court granted a preliminary injunction enjoining the placement of the Initiative on the ballot, which Koetje appealed.

We hold that the trial court did not err by conducting a pre-election review of the Initiative to determine whether it was outside the scope of the initiative power. Further, because the Initiative was administrative rather than legislative in nature and improperly interferes with the county council's budgetary power, the trial court properly determined

that the Initiative was outside the scope of the initiative power and granted declaratory and injunctive relief. Therefore, we affirm.

BACKGROUND

On June 7, 2022, the Whatcom County Council adopted Ordinance 2022-045 to submit for special election a proposition to lift the limit on regular property taxes, also known as a "levy lid lift," to create a "Healthy Children's Fund" (the "Fund") specifically for childcare, early learning programs, and increased support for vulnerable children. The resulting proposition, "Proposition 5," was placed on the ballot and certified as approved on November 29, 2022. Following Proposition 5's passage, the Whatcom County Council adopted Ordinance 2022-092, imposing the levy lid lift, creating the Fund, and enacting the implementation plan "as defined in Ordinance 2022-045."

On June 5, 2024, Koetje, along with "Washingtonians for a Sound Economy,"[1] collected sufficient signatures to place the Initiative on the November 2024 ballot. The Initiative's operative language[2] stated as follows:

> THEREFORE, BE IT RESOLVED by the citizens of Whatcom County that Ordinance 2022-045 (Proposition 5) be repealed, as it poses a tangible threat to our community. Vote YES to repeal.

Protect Whatcom Kids filed suit seeking declaratory and injunctive relief against Koetje and Whatcom County "to bar the Initiative from appearing on a future ballot, and to prevent the County from taking any actions to conduct or certify an election on the Initiative" based on the Initiative's improper scope and deficiencies in its ballot title.

---

[1] The Appellant's briefing describes Washingtonians for a Sound Economy as "initiative proponents."

[2] The trial court noted, "In evaluating the substance of an initiative, the courts consider only the operative section of the measure, not the 'whereas' clauses or the intent of the sponsors. Thus, the validity of Initiative 2024-01 turns on *its single operative sentence*." (footnotes and citations omitted). The parties do not dispute the trial court's order in this regard.

Whatcom County Council filed a response to the petition agreeing with Protect

Whatcom Kids that the Initiative was invalid.[3]

The trial court granted declaratory and injunctive relief on September 3, 2024.

Koetje filed a timely appeal.

DISCUSSION

Koetje challenges the trial court's order granting a preliminary injunction on

several bases. First, he contends the court erred by permitting pre-election review of the

Initiative as the claims were not justiciable. He also argues the court erred by

determining the Initiative exceeded the scope of the initiative power. Finally, Koetje

contends that Protect Whatcom Kids' procedural challenge was time-barred and that the

injunction was not an appropriate remedy.

I. Propriety of Pre-election Review

"Justiciability is a threshold inquiry and must be answered in the affirmative

before a court may address the merits of a litigant's claim." Coppernoll v. Reed, 155

Wn.2d 290, 300, 119 P.3d 318 (2005) (citing To-Ro Trade Shows v. Collins, 144 Wn.2d

403, 411, 27 P.3d 1149 (2001)). This court reviews the justiciability of pre-election

challenges to initiatives de novo. Am. Traffic Sols., Inc. v. City of Bellingham, 163 Wn.

App. 427, 432, 260 P.3d 245 (2011).

"Preelection review of initiative measures is highly disfavored." Futurewise v.

Reed, 161 Wn.2d 407, 410, 166 P.3d 708 (2007) (citing Coppernoll, 155 Wn.2d at 297).

The "fundamental reason" is that "the right of initiative is . . . deeply ingrained in our

state's history, and widely revered as a powerful check and balance on the other

---

[3] Because the arguments of the Respondents, Whatcom County Council and Protect Whatcom Kids, largely overlap, we refer to them collectively as Protect Whatcom Kids.

branches of government." Id. (internal quotation marks omitted) (quoting Coppernoll, 155 Wn.2d at 296-97). "[P]reelection challenges to the substantive validity of initiatives are particularly disallowed." Id. Such review "would involve the court in rendering advisory opinions, would violate ripeness requirements, would undermine the policy of avoiding unnecessary constitutional questions, and would constitute unwarranted judicial meddling with the legislative process." Id. Therefore, our Supreme Court has held that pre-election substantive challenges to initiatives are not justiciable. Id.

Washington courts recognize only "two narrow exceptions to this general rule against preelection review." Coppernoll, 155 Wn.2d at 297. We may consider (1) whether the initiative meets "the procedural requirements for placement on the ballot" and (2) whether "the subject matter of the initiative is beyond the people's initiative power." Futurewise, 161 Wn.2d at 411. Indeed, "[t]he idea that courts can review proposed initiatives to determine whether they are authorized by article II, section 1, of the state constitution is nearly as old as the amendment itself." Philadelphia II v. Gregoire, 128 Wn.2d 707, 717, 911 P.2d 389 (1996). By contrast, a claim that an initiative would be unconstitutional if enacted is not subject to pre-election review. Futurewise, 161 Wn.2d at 411. A challenge that facially appears as a challenge to the subject matter of an initiative may in fact be a challenge to an initiative's constitutionality. Id. at 412. The court must analyze whether purported subject-matter challenges to initiatives are in fact constitutional challenges. Id.

A claim that an initiative is administrative in nature rather than legislative is appropriate for pre-election review. See, e.g., City of Port Angeles v. Our Water-Our Choice!, 170 Wn.2d 1, 7-8, 239 P.3d 589 (2010) (considering administrative nature of

4

initiative in pre-election review of whether the initiative was within the scope of initiative power); Spokane Entrepreneurial Ctr. v. Spokane Moves to Amend Const., 185 Wn.2d 97, 107-08, 369 P.3d 140 (2016) (in pre-election review, considering administrative nature of initiative in determining it exceeded the scope of the initiative power). Likewise, a pre-election claim that an initiative is outside the scope of legislative power is justiciable. See Protect Pub. Health v. Freed, 192 Wn.2d 477, 482-84, 430 P.3d 640 (2018) (upon pre-election review, holding that initiative exceeded initiative power because it interfered with King County Council's budgetary authority).

Here, Protect Whatcom Kids alleges that the Initiative exceeds the scope of the initiative power because it is administrative, rather than legislative, in nature, and encroaches on the county council's exclusive budgetary authority. Both allegations are justiciable, non-constitutional challenges to the Initiative that can be reviewed prior to election. Accordingly, the trial court did not err in engaging in pre-election review of the Initiative.[4]

II. Scope of the Initiative Power

"The local initiative power is more limited than the statewide initiative power." Jewels Helping Hands v. Hansen, 4 Wn.3d 665, 686, 567 P.3d 19 (2025). "[L]ocal initiatives can accomplish only what falls within the scope of their authorized power." Id. A local initiative exceeds its scope "if it (1) is 'administrative' . . . instead of 'legislative in nature' or (2) affects issues delegated by the State to a local government's 'legislative

---

[4] By contrast, because Protect Whatcom Kids' argument that the Initiative violated the contracts clause, WASH. CONST. art. 1, sect. 23, is a substantive challenge to the Initiative, it was error for the trial court to address this argument in its pre-election review.

authority' rather than to the local government as a 'municipal entity.' " Id. at 686-87 (quoting Freed, 192 Wn.2d at 483).

Here, Protect Whatcom Kids contends that the Initiative exceeded the initiative power both because it was administrative in nature and because it encroached on the county legislative authority's exclusive budgetary power. We agree on both alternative grounds. [5]

A.  Administrative or Legislative in Nature

Administrative matters "are not subject to initiative or referendum." Our Water-Our Choice!, 170 Wn.2d at 8. "Generally speaking, a local government action is administrative if it furthers (or hinders) a plan the local government . . . has previously adopted." Id. at 10. Stated another way, "administrative matter[s] . . . deal[] with carrying out and executing laws or policies already in existence." Spokane Entrepreneurial Ctr., 185 Wn.2d at 108.

In the seminal case on this topic, Ruano v. Spellman, King County voters approved a proposition authorizing the issuance of bonds to build a multipurpose stadium. 81 Wn.2d 820, 821, 505 P.2d 447 (1973). Bonds were issued and the King County Council exercised an option to acquire the property for construction. Id. Thereafter, an initiative was filed and certified for the ballot that, in essence,

> would repeal the resolution authorizing the project and the bonds to finance it; prohibit spending of funds for further development; cause outstanding bonds to be repaid "as soon as practical and at the least cost to King County property owners"; and direct any surplus funds remaining to be transferred to the King County general fund.

---

[5] Given this disposition, we do not address Protect Whatcom Kids' additional arguments as to why the Initiative exceeded the initiative power. We also need not address the argument by Protect Whatcom Kids (not joined by the Whatcom County Council) as to alleged defects in the Initiative's ballot title, nor Koetje's response that the challenge to the ballot title was untimely.

Id. at 822.[6] The Washington Supreme Court held the initiative exceeded the initiative

power. The court acknowledged that, even though the original proposition authorizing

the project, introduced by a Board of County Commissioners resolution, was legislative

in nature, and the initiative would, in essence, "repeal the resolution authorizing the

project and the bonds to finance it[ and] prohibit spending of funds for further

development," the initiative nevertheless exceeded the initiative power because at the

time the initiative was submitted, "only administrative decisions remained . . . decisions

---

[6] In full, the initiative provided as follows:

'Initiative Measure No. 5: Repealing Authorization for Multi-Purpose Stadium.

'BE IT HEREBY ENACTED:

'Section 1. Resolution No. 34567, dated December 18, 1967, and approved by the voters of King County at an election February 13, 1968, entitled as follows:

'A RESOLUTION of the Board of County Commissioners of King County, Washington, providing for the submission to the qualified electors of the county at a special election to be held therein on February 13, 1968, of a proposition authorizing the county to issue its general obligation bonds in the principal amount of not to exceed $40,000,000 for the purpose of providing part or all of the funds to pay the cost of acquiring, constructing and equipping a multipurpose public stadium in the county.

be, and the same is hereby repealed.

'Section 2. King County, and any of its officers or agents are hereby prohibited from expending any funds for the further development of said multi-purpose stadium provided for by Resolution No. 34567.

'Section 3. Any and all bonds that have been sold and are outstanding shall be repaid to the purchaser as soon as practical at the least cost to King County property owners, thereby leaving no obligation to King County property as it relates to Resolution No. 34567.

'Section 4. Any and all surplus funds after repayment of the bonds and payment for previously properly authorized services or contracts shall be transferred to the King County general fund.

'Section 5. The County Council may pass such ordinances or resolutions implementing this ordinance as may be desirable or necessary to effectuate its purpose.'

Id. at 822 n.1.

not subject to the initiative process." Id. at 822, 825. In reaching its decision, the Supreme Court reasoned,

> By its vote the electorate had declared its legislative policy to build a multipurpose stadium, to finance it [with] bonds, and to repay those bonds from specified sources. The legislative decision on site selection had been made. No new law would be involved in expending funds for those declared purposes. The county and its agents in making those expenditures simply were executing an already adopted legislative determination.

Id. at 824.

The facts here closely mirror those in Ruano. In November 2022, Whatcom County voters approved Proposition 5, introduced by the Whatcom County Council as Ordinance 2022-045, authorizing the levy lid lift to create the Healthy Children's Fund. The Whatcom County Council subsequently took action in December 2022 to implement the levy lid lift and the Fund by passing Ordinance 2022-092.

Like the initiative in Ruano, the Initiative here seeks to repeal Ordinance 2022-045 (Proposition 5) authorizing the project and the tax to finance it, as well as to prohibit the spending of funds for further development of the project. The operative Initiative language states this purpose even more clearly than the initiative in Ruano: "THEREFORE, BE IT RESOLVED by the citizens of Whatcom County that Ordinance 2022-045 (Proposition 5) *be repealed*." (Emphasis added.)

Koetje attempts to distinguish the Initiative here from those that are administrative in nature, citing Jewels Helping Hands, 4 Wn.3d at 665. In that case, our Supreme Court held that an initiative exceeded the initiative power in seeking to expand the locations in the city where camping was banned. Id. at 690-91. Koetje argues that in Jewels Helping Hands, "the initiative was improperly administrative because it 'modifies

8

details of an already enacted general policy scheme,' " whereas the Initiative here "actually repeals the entire policy enacting the tax."

We are not persuaded by Koetje's argument. First, the Initiative here did not repeal a policy enacting a tax—it attempted to repeal Ordinance 2022-045 (Proposition 5), which authorized a special election for a levy lid lift, not Ordinance 2022-092, which implemented the tax and the Fund.

Moreover, the only remaining portions of Ordinance 2022-045 were indeed "details of an already enacted general policy scheme"—implementation guidelines for the scheme actually enacted under Ordinance 2022-092. Ordinance 2022-045 contained nine sections. Section 1 provided for the submission of the proposition authorizing a new property tax levy to the electorate at a special election "[t]o provide necessary funding" for a Healthy Children's Fund. Section 2 provided for the creation of the Fund and indicated that the levy proceeds would be deposited there and used exclusively for this Fund. Section 3 outlined the eligible expenditures for the fund. Section 4 was the Fund's implementation plan. Section 5 provided for auditing and oversight of the Fund. Section 6 called for the special election on the levy lift. Sections 7-9 concerned the publishing of the ordinance itself.

Because the special election had already been held, sections 1 and 6 of Ordinance 2022-045 could no longer be repealed. Consequently, the only "live" portions of the ordinance concern administrative details such as where the levy proceeds would be deposited (section 2), how the funds were to be used (section 3), how the Fund will be implemented and administered by the Department of Health (section 4), and how the Fund shall be audited (section 5). By the time the Initiative was introduced, the

Whatcom County Council had already executed contracts under the fund, passed various additional ordinances implementing programs and services under the fund, and committed "more than $1.6 million in funding for services, including a contract for more than $800,000 to the Bellingham Food Bank and contracts for other health and wellbeing services."[7]

Thus, like the initiatives in Jewels Helping Hands and Ruano, the Initiative here " 'hinders[ ] [that] plan [that] the local government or some power superior to it has previously adopted' " and thus "falls outside the scope of the local initiative power." Jewels Helping Hands, 4 Wn.3d at 692 (quoting Our Water-Our Choice!, 170 Wn.2d at 10). The trial court properly concluded that the Initiative was outside the scope of the initiative powers.

B.  Interference with County's Budgetary Authority

Protect Whatcom Kids argues in the alternative that the Initiative exceeded its scope because it interferes with the county council's budgeting power. "Chapter 36.40 RCW establishes the limits on statutory delegation regarding county budgets and grants the legislative authority to county councils to 'fix and determine each item of the budget' and to enact biennial, supplemental, and emergency budgets." Freed, 192 Wn.2d at 483-84 (quoting RCW 36.40.080, .250). The authority of county councils to budget, particularly for public health issues, includes both appropriating funds and determining the use of such funds. See RCW 70.12.025; RCW 36.40.080. Thus, an initiative that

---

[7] Along with its briefing, Protect Whatcom Kids filed a "Motion for Judicial Notice" and sought to introduce evidence that was not before the trial court. In response, Koetje filed a "Motion to Strike." We deny Protect Whatcom Kids' motion and have not considered the additional information that post-dates the trial court ruling or the portions of their briefs relying on such information. See Jewels Helping Hands, 4 Wn.3d at 683 n.18 (denying motion, in post-election review of initiative, to take judicial notice of information post-dating the trial court proceedings that were unnecessary to resolving the case). Accordingly, we also deny Koetje's motion to strike as moot.

"improperly interferes with the budgetary authority of the [County] Council . . . is outside the scope of the local initiative power" and may be properly enjoined from the ballot. Freed, 192 Wn.2d at 487.

In determining whether an initiative exceeds the initiative power by improperly interfering with the budgetary authority of a county council, courts must consider the "ultimate goal" of an initiative "[v]iewed in context." See id. at 486. In Freed, the King County Board of Health passed a resolution to, among other things, implement community health engagement location sites across the county, which "would provide opioid users with a place to safely use drugs, access to medical professionals who can administer naloxone to help reverse overdoses, a needle exchange program, and a way to connect to services and treatment." Id. at 480. Freed filed Initiative 27 ("I-27"), which "would prohibit the use of public funds for 'registration, licensing, construction, acquisition, transfer, authorization, use, or operation of a supervised drug consumption site'; prohibit anyone from operating or maintaining any building that is used as a supervised consumption site; and impose civil liability on anyone who violates the initiative." Id.

The Washington Supreme Court determined that the initiative exceeded the initiative power because it interfered with the county's budgeting power. Id. at 485-87. In reaching that conclusion, the court first noted that "[o]ne of the five key points of I-27 is to '[p]rotect[ ] taxpayers by prohibiting public financing of drug consumption sites.' " Id. at 485. The resolution that I-27 sought to inhibit was one that "direct[ed] that over $2,000,000 be used to implement the Task Force public health recommendations." Id.

at 486. The court held that "[b]ecause [the ordinance] indicates how and where money is to be spent, I-27's aim is directly at budget appropriation." Id.

Here, like the ordinance in Freed that I-27 sought to repeal, Ordinance 2022-045 (Proposition 5) indicates specifically how, how much, and where money collected by the tax levy is to be spent. The Initiative purports to focus on protecting taxpayers by repealing the "oppressive" and "burdensome tax" implemented under Proposition 5, which Koetje contends "poses a tangible threat to our community" and "perpetuates an unyielding cycle of financial strain" that "suffocate[s]" Whatcom County taxpayers. Thus, as in Freed, where the initiative was not within proper scope of the initiative power because it interfered with the county's budgeting power, here too, the Initiative interferes with the county council's budgeting power and was properly excluded from the ballot prior to election.

But Koetje argues that the analysis from Freed does not apply here because I-27 "actually tied the hands of the county council by limiting the permitted use of public funds, unlike the initiative in this matter which limited the funds themselves." Further, Koetje argues that "the initiative at issue [here] does not direct the expenditure of funds on specific budget items. It simply repeals authority to collect a tax."

This argument is factually inaccurate, as the Initiative did not purport to "repeal[] authority to collect a tax," but instead sought to repeal the ordinance that required a special election to allow collection of additional property taxes. And, as discussed above, the only live sections of Ordinance 2022-045 (Proposition 5) directed the expenditure of funds on specific budget items. Accordingly, the analysis in Freed, 192 Wn.2d at 486-87, applies and supports the conclusion that here, the Initiative interferes

with the county council's budgeting authority and exceeded the scope of the initiative power.

III. Injunctive Relief

Appellant argues that Protect Whatcom Kids failed to demonstrate a clear right or an injury and therefore injunctive relief was inappropriate. We disagree.

We review trial court decisions on preliminary injunctions for abuse of discretion. Huff v. Wyman, 184 Wn.2d 643, 648, 361 P.3d 727 (2015). To be entitled to injunctive relief, a party must demonstrate "(a) a clear legal or equitable right, (b) a well-grounded fear of immediate invasion of that right, and (c) that the act complained of will result in actual and substantial injury." Id. at 651. "Failure to establish any one of these requirements results in a denial of the injunction." Id.

Koetje alleges that Protect Whatcom Kids lacked a clear legal right to the injunction it sought because the ballot title was accurate and the challenge to the ballot title was untimely. But Protect Whatcom Kids' challenge was not limited to the ballot title. As addressed above, it challenged the Initiative's scope. To determine whether a party has a clear legal or equitable right to an injunction, Washington courts " 'examine[] the likelihood that the moving party will win on the merits.' " Wyman, 184 Wn.2d at 652 (quoting Rabon v. City of Seattle, 135 Wn.2d 278, 285, 957 P.2d 621 (1998)). Because there was a high likelihood Protect Whatcom Kids would prevail on the merits of its scope challenge, it demonstrated a legal right to an injunction.

Koetje further argues, without substantiation, that Protect Whatcom Kids failed to show substantial injury. We decline to consider this argument, as "[p]assing treatment of an issue . . . is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn.

13

App. 148, 153, 913 P.2d 413 (1996). We also reject Koetje's suggestion that the circumstances did not warrant the "transcendent and extraordinary remedy"[8] of an injunction. To the contrary, when the Washington Supreme Court has held that an initiative exceeds the scope of the initiative power, it has affirmed the remedy of injunctive relief preventing the initiative from appearing on the ballot. See, e.g., Freed, 192 Wn.2d at 487; Seattle Bldg. & Const. Trades Council v. City of Seattle, 94 Wn.2d 740, 745, 620 P.2d 82 (1980). The trial court did not err in granting injunctive relief here.

CONCLUSION

We affirm.

_____
Chung, J.

WE CONCUR:

_____, ACJ

_____
Mann, J.

---

[8] Wyman, 184 Wn.2d at 648.