[No. 3418–II. Division Two. January 31, 1980.]

ELMER D. LINCE, *Respondent,* v. THE CITY OF
BREMERTON, ET AL, *Defendants,* RICHARD
K. WELD, ET AL, *Appellants.*

310

*Alan Corner,* for appellants.

*Gary H. Sexton* and *Thomas C. O'Hare,* for respondent.

PEARSON, J.—This case involves the amendment of a city zoning ordinance through the initiative process. The Residential One District Initiative, a measure substantially altering the Bremerton zoning ordinance, was adopted by its voters on May 17, 1977, pursuant to article 13, section 46 of the Bremerton City Charter. The initiative prevented the construction of multiple family dwellings in a Residential One zoning district, which constituted over 50 percent of the city. The initiative also prevented the construction or alteration of any building crossing a preexisting lot line in the zoning district, and limited deplatting or replatting. Plaintiff Lince was denied a building permit to alter some windows in a residence because it violated the initiative ordinance to issue such a permit for a structure which crossed lot lines. After the denial of the permit was upheld by the planning commission and the city commissioners, Lince appealed to Superior Court. The court granted Lince's motion for a summary judgment invalidating the ordinance, holding that the zoning power is granted to the

legislative body of the City of Bremerton and could not be amended by initiative. We agree with the trial court and affirm the summary judgment.

The court in *Leonard v. Bothell,* 87 Wn.2d 847, 557 P.2d 1306 (1976) held that two basic questions must be answered to determine whether a city ordinance is subject to the initiative process. The first is whether the ordinance is a legislative or administrative act of the City. To be a proper subject for an initiative, the ordinance must involve a legislative act. The second question is whether the power exercised in the initiative was granted by the State to the City as a corporate entity or to the legislative authority of the City. In *Leonard,* the court invalidated a zoning ordinance on both grounds, holding that an amendment to a zoning code was an administrative act, and that the legislature had delegated the zoning power to the city council and not to the City as a corporate entity.

 *Leonard* discussed the general rule that

> [a]mendments of the zoning code, or rezones, usually are decisions by a municipal legislative body implementing the zoning code and a comprehensive plan. The legislative body essentially is then performing its administrative function.

*Leonard v. Bothell, supra* at 850. The sweeping zoning change in the instant case, however, is not an administrative rezone. The initiative determined the housing density in half the area of a major metropolitan city, and prevented improvement or alteration of many existing structures within that area. The initiative did not implement the existing zoning code, but dramatically changed it. *See* 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55, at 213–14 (3d ed. rev. 1969). The initiative was a permanent and general change to the Bremerton zoning and platting law and constituted a legislative action. As such, the ordinance is not invalid under the first ground advanced in *Leonard v. Bothell.*

■ We agree, however, with the trial court's conclusion that the legislature granted the zoning power to the legislative body of the City, the council, and not to the City as a corporate entity. Appellants argue that this case is distinguishable from *Leonard* in that Bothell is a code city which is governed in zoning matters by RCW Title 35A, whereas Bremerton is chartered under the state constitution. The constitution specifically provides, however, that city charters must be "consistent with and subject to the Constitution and laws of this state". Const. art. 11, § 10. In *State ex rel. Guthrie v. Richland*, 80 Wn.2d 382, 384, 494 P.2d 990 (1972), the court stated that

> where the general law grants authority to the legislative authority of a city, that authority may not be exercised by the city as a corporate entity, nor is the exercise of that authority by the legislative authority subject to repeal, amendment or modification by the people through the initiative or referendum procedure.

*See* Trautman, *Initiative and Referendum in Washington: A Survey,* 49 Wash. L. Rev. 55, 82 (1973). Washington's general law grants and limits the zoning power to the legislative body of charter cities as well as code cities. RCW 35.63 defines "cities" as "every incorporated city and town" and then grants the zoning power to the city council at RCW 35.63.110. The council, in turn, is defined as the "chief legislative body of a city." Further, RCW 58.17 delegates the platting power to the legislative body of cities and towns. RCW 58.17.070, for example, requires that

> A preliminary plat of proposed subdivisions and dedications of land shall be submitted for approval to the legislative body of the city . . . within which the plat is situated.

The voters' power to pass an annexation ordinance by referendum election was considered in *State ex rel. Bowen v. Kruegel,* 67 Wn.2d 673, 409 P.2d 458 (1965), which involved another charter city, Richland. The court relied on statutes akin to those discussed above (RCW 35.63 and

RCW 58.17) involving zoning and platting powers, but similarly placing the annexation power with the legislative body (RCW 35.13). The court held that the legislature vested the power of annexation with the city council and not with the City as a corporate entity, and invalidated the annexation ordinance. Likewise, the zoning and platting power has been delegated to the legislative authority of cities, and thus the trial court was correct in invalidating the Bremerton ordinance.

Strong policy considerations support placing the zoning power with the legislative body of the city. These considerations were discussed in *Leonard v. Bothell, supra* at 854:

> Amendments to the zoning code or rezone decisions require an informed and intelligent choice by individuals who possess the expertise to consider the total economic, social, and physical characteristics of the community. Respondent's planning commission and city council normally possess the necessary expertise to make these difficult decisions. The State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, emphasizes this need for carefully planned land–use decisions. SEPA requires the city council to prepare a detailed statement setting forth the environmental consequences of significant actions affecting the quality of the environment. RCW 43.21C-.030. SEPA requires a sophisticated understanding of the environmental problems of the project. . . . In a referendum election, the voters may not have an adequate opportunity to read the environmental impact statement or any other relevant information concerning the proposed land–use change.

As the court noted in *Hurst v. Burlingame,* 207 Cal. 134, 141, 277 P. 308, 311 (1929), "[t]he initiative law and the zoning law are hopelessly inconsistent and in conflict as to the manner of the preparation and adoption of a zoning ordinance." One particular difficulty, as discussed in *Leonard,* is reconciling the environmental considerations mandated by SEPA with the initiative process. The trial court in the instant case determined that the procedure used to adopt the initiative violated SEPA. While we do not reach this question, we note that were the initiative

otherwise valid, substantial SEPA issues would be raised, such as whether a threshold determination of environmental impact is necessary.

We affirm the summary judgment.

REED, C.J., and PETRIE, J., concur.