[No. 36935-4-II.  Division Two.  July 15, 2008.]

THE CITY OF PORT ANGELES, *Respondent*, v. OUR WATER-OUR CHOICE ET AL., *Appellants*.

---

870

*Gerald B. Steel*, for appellants.

*William E. Bloor, City Attorney; Roger A. Pearce* and *P. Stephen DiJulio* (of *Foster Pepper, PLLC*), for respondent.

¶1 PENOYAR, A.C.J. — Our Water-Our Choice and Protect Our Waters appeal a trial court decision ruling their initiatives invalid. Both initiatives deal with controlling additives to Port Angeles' public water supply. Courts do not review initiatives for whether the proposed law is good public policy but do review initiatives for whether they would be lawful if approved. Unlike statewide initiatives, trial courts review the substance and nature of local initiatives before they are submitted to the voters because local initiatives must be consistent with federal and state laws. The trial court found the initiatives invalid because they were administrative in nature, they exceeded local initiative power because the legislature specifically delegated authority to operate the city water system to the city council, and the city had no power to enact ordinances such as those represented by the initiatives. We agree with the trial court and hold the initiatives invalid.

## FACTS

¶2 In 2003, the Port Angeles City Council decided to fluoridate the city's water system at the urging of local health care professionals. In 2005, the council passed a motion approving a contract with the Washington Dental Service Foundation (WDSF). The contract provided that WDSF would construct and install a fluoridation system, and the city agreed to operate the system for 10 years or pay the foundation $343,000 for the system. Clallam County Citizens for Safe Drinking Water challenged the council's decision that the fluoridation system was categorically

exempt from environmental review under the State Environmental Policy Act, chapter 43.21C RCW. We ultimately upheld the council's decision in a previous appeal. *Clallam County Citizens for Safe Drinking Water v. City of Port Angeles*, 137 Wn. App. 214, 220, 151 P.3d 1079 (2007).

¶3 Meanwhile, each of the appellants in this case filed an initiative, the effect of which, if enacted, would prohibit the city from adding fluoride to the public water supply. The Our Water-Our Choice initiative, the "Medical Independence Act," would prohibit the city from adding to the water supply any substance designed to treat mental or physical disease or which would affect the function or structure of the human body. Appellant's Clerk's Papers (ACP) at 10-11. The Protect Our Waters initiative, the "Water Additives Safety Act," would criminalize the addition of any substance intended to treat or affect the mental or physical health of a person unless the Food and Drug Administration specifically approved the substance for use in public water systems.[1] ACP at 12-13.

¶4 Port Angeles (City) filed a declaratory judgment action, asking the trial court to rule that the initiatives were beyond the local initiative power. The Committees responded with a mandamus action seeking an order requiring the City to place the initiatives on the ballot. The parties agreed to consolidate the actions and try the case on undisputed facts.[2] The trial court ruled that the City's decision to fluoridate the water was administrative and thus beyond the local initiative power. The trial court also concluded that the initiatives exceeded the local initiative power because the legislature specifically delegated to the city council the authority to operate the city water system, and because the City had no power to enact ordinances such as those represented by the initiatives.

---

[1] Our Water-Our Choice and Protect Our Waters will be collectively referred to as "Committees" in this opinion.

[2] Both county superior court judges recused themselves, and Judge M. Karlynn Haberly from Kitsap County was appointed as a visiting judge.

¶5 The Committees sought direct review by the Supreme Court, which declined to grant review and transferred the case to us.

## ANALYSIS

### I. PREELECTION REVIEW OF INITIATIVE

¶6 The Committees challenge the trial court's conclusions of law and its judgment based on those conclusions of law. At trial, the court determined that both initiatives were invalid because (1) they sought to regulate matters administrative in nature, (2) they improperly interfered with the City's legislatively granted right to operate the public water system, and (3) they exceeded the City Council's lawmaking authority.

### A. Standard of Review

¶7 We review issues of law de novo. *In re Elec. Lightwave, Inc.*, 123 Wn.2d 530, 536, 869 P.2d 1045 (1994).

¶8 Preelection review of an initiative is disfavored, but appropriate when the initiative is beyond the scope of the initiative power. *Coppernoll v. Reed*, 155 Wn.2d 290, 301, 119 P.3d 318 (2005). An initiative is generally within the initiative power if it meets two requirements: It is "legislative in nature" and it would enact a " 'law that is within the state[/city's] power to enact.' " *Futurewise v. Reed*, 161 Wn.2d 407, 411, 166 P.3d 708 (2007); *Coppernoll*, 155 Wn.2d at 302 (quoting *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 719, 911 P.2d 389 (1996)). Generally, an act is "legislative" if it creates a new policy or plan, while an act is "administrative" only if it " 'merely pursues a plan already adopted by the legislative body itself, or some power superior to it.' " *Bidwell v. City of Bellevue*, 65 Wn. App. 43, 46, 827 P.2d 339 (1992) (quoting *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 748, 620 P.2d 82 (1980)); *see also Heider v. City of Seattle*, 100 Wn.2d 874, 876, 675 P.2d 597 (1984); *Ruano v. Spellman*, 81 Wn.2d 820, 823, 505 P.2d 447 (1973).

¶9 Additionally, initiative rights do not extend to matters that state law delegates exclusively to local legislative authorities. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 264, 138 P.3d 943 (2006); *Whatcom County v. Brisbane*, 125 Wn.2d 345, 350, 884 P.2d 1326 (1994). With respect to the power to enact a law, a state initiative must be within "the scope of the state legislative power." *Coppernoll*, 155 Wn.2d at 301. Local initiatives, in turn, must be within the *local* legislative power.

## B. Fundamental and Overriding Purpose

¶10 The Committees urge us to hold that the trial court erred in its conclusions of law by reviewing more than just the "fundamental and overriding purpose" of the initiatives to determine both whether they are legislative and whether their purpose is within the City's power to enact. Appellant's Br. at 20. The Committees argue that per *Coppernoll*, the court must limit its preelection inquiry to only the "fundamental and overriding purpose of the initiative":

> In *Philadelphia II*, we used a two part test to determine whether the initiative exceeded the legislative power. "[I]n order to be a valid initiative, [an initiative] must be legislative in nature and enact a law that is within the [jurisdiction's] power to enact." . . . We looked at the "fundamental and overriding purpose" of the initiative rather than mere "incidental[s]" to the overriding purpose.

*Coppernoll*, 155 Wn.2d at 302 (some alterations in original) (citations omitted) (quoting *Philadelphia II*, 128 Wn.2d at 719).

¶11 The Committees argue that *Coppernoll's* use of "fundamental and overriding purpose" extends to the court's entire review of an initiative, and that this standard applies not only to determine whether the initiative is within the city's power to implement, but also to decide the legislative/administrative issue. *Coppernoll* does state that when reviewing a state-wide initiative to determine if it is in the state's power to enact, the court should review only the

"fundamental and overriding purpose" of the initiative. 155 Wn.2d at 303. A close reading of *Coppernoll* reveals that the court does not suggest that the same "fundamental and overriding purpose" test applies in determining whether an initiative's purpose is legislative in nature. Instead, the opinion connects the "fundamental and overriding purpose" language solely to the determination of whether the initiative is within the State's power to enact.[3] 155 Wn.2d at 303.

¶12 This reading of *Coppernoll* is further confirmed by the Washington Supreme Court's subsequent decision in *Futurewise v. Reed*, where it states:

> If an initiative otherwise meets procedural requirements, is legislative in nature, and its "fundamental and overriding purpose" is within the State's broad power to enact, it is not subject to preelection review.

161 Wn.2d at 411 (citing *Coppernoll*, 155 Wn.2d at 302-03).

¶13 In sum, an initiative must be both legislative in nature and within the locality's power to enact. After examining *Coppernoll* and *Futurewise*, it is clear that a court may review more than the "fundamental and overriding purpose" of the initiative when determining whether it is legislative or administrative in nature.[4]

---

[3] In *Coppernoll*, there was no question that the initiative was legislative in nature. Thus, *Coppernoll* concludes, "In adherence to our prior decisions, we therefore restrict analysis of [Initiative] 330 to determining if its 'fundamental and overriding purpose' is within the state's power to enact." *Coppernoll*, 155 Wn.2d at 303. The court makes no similar assertion for determination of whether an initiative is legislative or administrative.

[4] Additionally, we note that the trial court did not make a finding as to the fundamental and overriding purpose of the initiatives, and the Committees did not request that the court make one. Only now do they assert that the fundamental purpose of their initiatives is to "prohibit pollution of all public water systems serving [the City] and to protect health and safety" of its citizens by either prohibiting the addition of medications to the water supply or by strictly monitoring those medications deemed appropriate. Appellant's Br. at 21. This is an assertion which the City challenges by noting that the purpose of the initiatives is to "halt fluoridation of the City's water supply." Resp't's Br. at 18. The trial court is the proper body to determine the initiatives' purpose, though, for our purposes, such a determination of fundamental and overriding purpose is unnecessary as the initiatives fail on other grounds.

## C. The Committees' Initiatives are Administrative in Nature

¶14 Public water systems operate under a complex regulatory scheme. The federal Environmental Protection Agency (EPA), through its Office of Ground Water and Drinking Water, regulates all public water systems in the United States under the Safe Drinking Water Act (Act), 42 U.S.C. §§ 300f to 300j-26. The EPA sets national standards for drinking water, but generally, the direct oversight of public water systems is conducted by the states. Under the Act, a state can apply to implement the Act by agreeing to set standards at least as stringent as the federal standards and then enforce those standards.

¶15 The EPA granted Washington primacy to implement the Act (primacy has been granted to all but one state). *See* RCW 70.119A.080 (Department of Health ensures compliance with Safe Drinking Water Act). The state Board of Health is charged with regulating the purity of public water systems. RCW 43.20.050(2)(a). The legislature created a single exception, allowing the local health departments in every county with a population larger than 125,000 to "establish water quality standards for its jurisdiction more stringent than standards established by the state board of health," should it choose to do so. RCW 70.142.040. This statute, however, does not apply here.[5]

¶16 Given this legal framework, the trial court's determination that the Committees' initiatives are administrative in nature is correct. Each initiative would regulate additives to the City's public water system. The Committees argue that the initiatives merely add new restrictions not already found in the regulatory scheme and thus create new law (i.e., legislative, not administrative). This argument fails. Under the Department of Health's regulatory scheme, the test here is whether the only decisions left are administrative in nature. *Ruano*, 81 Wn.2d at 824-25.

---

[5] Port Angeles is not a county and does not have more than 125,000 residents.

¶17 As we previously held in *Clallam County Citizens*, the City's initial proposal to fluoridate its water was an action under a program administered by the Department of Health. 137 Wn. App. at 220. The Department of Health has authority under RCW 70.119.050 to adopt rules and regulations relating to public water systems. Decisions by local water companies about which chemicals to add to public water systems are administrative in nature because those decisions merely implement plans already adopted and supervised by the Health Department. Ch. 246-290 WAC.[6] Here, the City itself lacks the authority to add additional legal restrictions; thus, any decisions regarding the purity of public water systems are administrative in nature.

¶18 Additionally, the Committees argue that their initiatives are legislative in nature because the City itself does not have an ordinance expressly setting permissible maximum levels for drinking water additives and testing methods. Thus, they argue, their proposed initiatives must be legislative because they would set local maximum levels for fluoride and other additives as well as provide testing standards for those additives. This argument also fails. The standard is not whether the City itself has adopted a plan regulating the additives, but whether a plan has already been adopted " 'by the legislative body [of the city] itself, or some power superior to it.' " *Heider*, 100 Wn.2d at 876 (quoting 5 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 16.55, at 194 (3d rev. ed. 1981)). Here, both the Washington Legislature and the Washington Board of Health are powers superior to the City and their comprehensive regulations constitute a plan regulating additives to public drinking water. Thus, the City's actions implementing that general plan are administrative, not legislative. Since the initiatives seem to pursue/affect a plan already in place, they are administrative in nature and therefore invalid.

---

[6] This WAC chapter describes all of the rules and regulations a public water system provider must comply with.

## D. Initiatives Not within the City's Power To Enact

¶19 The trial court ruled, additionally, that the initiatives were not within the City's power to enact. The Committees argue that the trial court erred in this conclusion as it should not have looked beyond the fundamental and overriding purpose of the initiatives in making its conclusion. They argue that by looking only at the overriding purpose, the measures are within the City's power to enact. The City disagrees, noting that though this State has adopted the method of reviewing only the fundamental and overriding purpose of an initiative—to determine whether a state has the power to enact a *statewide* initiative—it has not extended this test to review of local initiatives.

¶20 The City is correct that the Supreme Court has not yet discussed limiting their preelection review of local initiatives (to determine whether they are within a city's power to enact) to only the fundamental and overriding purpose of the initiative. The City argues that we should not extend the "fundamental and overriding purpose" test to preelection review of local initiatives because of the basic differences in the right of initiative between statewide and local initiatives.

¶21 Though the right to statewide initiative is protected by our state constitution, there is no similar constitutional protection or right of local initiative. WASH. CONST. art. II, § 1. The legislature did not grant optional initiative powers in noncharter code cities, such as Port Angeles, until 1973. LAWS OF 1973, 1st Ex. Sess., ch. 81, § 1 (*codified at* RCW 35A.11.080). Besides this basic difference, there is a practical difference between the two types of initiatives that warrants different types of preelection review.

¶22 Where a statewide initiative creates new state law, binding upon all, a local initiative can create only new law that is not inconsistent with or inapposite to state and federal law. *Seattle Bldg. & Constr. Trades Council*, 94 Wn.2d at 747. Where substantive review of a statewide initiative is inappropriate, a similar review for a local

initiative is warranted given the greater restrictions placed upon them. The City properly cites to several cases where the Washington Supreme Court has undertaken a substantive review of local initiatives or referendums to determine whether they were within the cities' power to enact. *See Seattle Bldg. & Constr. Trades Council*, 94 Wn.2d 740 (local initiative purporting to prohibit bridge across Lake Washington in the city of Seattle was beyond the scope of the local initiative power because it was inconsistent with the exclusive method provided in chapter 47.52 RCW for determining location of limited access routes); *State ex rel. Close v. Meehan*, 49 Wn.2d 426, 430-32, 302 P.2d 194 (1956) (local initiative that would have changed the site for a proposed sewage treatment plant was beyond the scope of the local initiative power because it violated the sewage treatment plant planning requirements of RCW 80.40.070).

¶23 Though both cases are on point, they were both decided by the court well in advance of its decisions discussing preelection review of the fundamental and overriding purpose of initiatives.[7] Furthermore, while differences between statewide and local initiatives arguably dictate that a court should employ different methods of preelection review, in this case it is unnecessary for us to decide this point. Both initiatives clearly fail because they are administrative in nature and improperly infringe on rights delegated by the legislature to the city council.

### E. Delegation to City Legislative Body

¶24 The trial court correctly determined that the initiative power does not extend to regulating public water systems because the legislature granted city legislative bodies the power to operate water utilities. *See* RCW 35A.11.020 ("The legislative body of each code city shall have all powers [necessary for] operating and supplying of

---

[7] The court decided *Philadelphia II* in 1996, *Coppernoll* in 2005, and *Futurewise* in 2007.

utilities and municipal services commonly or conveniently rendered by cities or towns.").[8]

¶25 As the Washington Supreme court recently explained in *1000 Friends of Washington v. McFarland*, 159 Wn.2d 165, 174, 149 P.3d 616 (2006), when the legislature clearly delegates power to a local legislative body as opposed to the city as a whole, referendums and initiatives that attempt to limit or modify that power are beyond the initiative power. The *1000 Friends* court reaffirmed its holding in *Brisbane*, 125 Wn.2d 345, that the legislature granted the local legislative body the power to implement the Growth Management Act (GMA), chapter 36.70A RCW, and thus local citizens may not exercise the referendum or initiative power to limit, modify, or overturn a local legislative body's actions under the act. *1000 Friends*, 159 Wn.2d at 174-75. Likewise, zoning decisions cannot be made by referendum or initiative because that power was expressly delegated to the local legislative body. *Lince v. City of Bremerton*, 25 Wn. App. 309, 312-13, 607 P.2d 329 (1980). The legislature in RCW 35A.11.020 clearly delegated the authority to operate a municipal water system to local legislative bodies rather than local municipal corporations. This delegation placed the operation of a municipal water system beyond the initiative power.[9]

¶26 The Committees urge us to discount the grant of power through RCW 35A.11.020 and instead find that the initiative is valid because the corporate city has the power to regulate water pollution through its police power. Ch. 35.88 RCW. Division One found a similar argument in *City of Seattle v. Yes for Seattle*, 122 Wn. App. 382, 93 P.3d 176 (2004), unpersuasive. Similarly, we are not persuaded by the Committees' argument in this case.

---

[8] It is well settled that in the context of statutory interpretation, a grant of power to a city's governing body ("legislative body") refers exclusively to the mayor and city council and not the electorate. *Malkasian*, 157 Wn.2d at 266.

[9] Chapter 246-290 WAC dictates how a municipal/public water system should be run. It further dictates water quality standards and testing procedures.

¶27 In *Yes for Seattle*, creek protection activists proposed an initiative to place development restrictions on property near creeks. The court held that this was a "development regulation" as defined by the GMA and that the legislature had granted authority to a city's legislative body to enact GMA development regulations, not to the city as a corporate body. 122 Wn. App. at 389. The activists argued that besides the GMA, there were broad grants of authority to cities generally for regulating creeks. For example, RCW 35.21-.090 granted authority to cities to manage watercourses; RCW 35.88.020 granted authority to cities to regulate pollution in streams; and article XI, section 11 of the Washington Constitution granted authority to cities to make all regulations not inconsistent with state laws. *Yes for Seattle*, 122 Wn. App. at 392. Division One held that these grants of authority were not controlling because the creek activists' proposed initiative would interfere with the legislature's *specific* grant of power to the legislative body of the city to enact development regulation. *Yes for Seattle*, 122 Wn. App. at 392.

¶28 As with the GMA, the legislative grant of authority to the legislative body of the city to "operat[e] and suppl[y] utilities" is explicit. RCW 35A.11.020. The legal test for the validity of a local initiative is not whether some general law might supply authority to the city as a corporation, but whether the proposed initiative would "interfere with the exercise of a power delegated by state law to the governing body of the city." *Priorities First v. City of Spokane*, 93 Wn. App. 406, 411, 968 P.2d 431 (1998). Put another way, the people cannot deprive the City's legislative authority of the power to do what the constitution and/or a state statute specifically permit it to do. *King County v. Taxpayers of King County*, 133 Wn.2d 584, 608, 949 P.2d 1260 (1997). To allow the initiatives to proceed on the basis of police power, or some other general theory, would be to undermine the legislative grant of authority to

the local legislative body and the complex regulatory scheme public water systems operate under.[10]

## II. ADDITIONAL FINDINGS OF FACT

¶29 The Committees assign error to the trial court's failure to adopt an additional finding of fact at presentment on January 19, 2007. This proposed finding of fact, 3.20, reads, "There are other public water systems besides the Port Angeles municipal water system that provide water service in the City of Port Angeles." Appellant's Br. at 13. Instead of asking us to hold that the trial court abused its discretion in not including the finding of fact, the Committees encourage us to adopt the missing finding of fact on our own. We decline to address this as it would not change our decision that the initiatives are administrative and beyond the scope of initiative power.

## III. ELECTION SHOULD NOT BE ORDERED

¶30 Because the trial court ruled properly that the initiatives are invalid, we will not issue a decree pursuant to RCW 35.17.290 to place the initiatives on the ballot.

## IV. ATTORNEY FEES

¶31 The Committees request attorney fees and costs should they prevail on appeal. The City (and WDSF) does not make a request for fees. Since the City prevailed on appeal, it is entitled to costs and the Committees are not. RAP 18.1.

¶32 We affirm the trial court.

HOUGHTON and HUNT, JJ., concur.

Review granted at 165 Wn.2d 1053 (2009).

---

[10] The Committees urge us to "harmonize" RCW 70.142.040 with chapter 35.88 RCW. Appellant's Reply Br. at 5. Given the explicit grant of power, harmonizing the statutes is unnecessary.