[No. 82225-5. En Banc.]
Argued February 23, 2010. Decided September 23, 2010.

THE CITY OF PORT ANGELES, *Respondent,* v. OUR WATER-OUR CHOICE! ET AL., *Petitioners.*

OUR WATER-OUR CHOICE, PAC, ET AL., *Petitioners,* v. THE PORT ANGELES CITY CLERK ET AL., *Respondents.*

2

*Gerald B. Steel*, for petitioners.

*William E. Bloor, City Attorney*, for respondent City of Port Angeles.

*Roger A. Pearce* and *P. Stephen DiJulio* (of *Foster Pepper PLLC*), for respondent Washington Dental Service Foundation LLC.

*James R. Deal II* on behalf Internation Academy of Oral Medicine and Toxicology; Oregon Citizens for Safe Drinking Water; Fluoride Action Network; Washington Action for Safe Water; Whidbey Environmental Action Network; Audrey Adams; Linda Martin; Bill Osmunson, DDS; Gerald H. Smith, MD; and Fluoride Class Action, amici curiae.

*Sheila M. Gall, P. Stephen DiJulio, Roger A. Pearce,* and *William R. Fleck* on behalf of Association of Washington Citites and City of Forks, amici curiae.

*P. Stephen DiJulio* on behalf of Washington State Dental Association and Water Fluoridation Science Committee, amici curiae.

¶1 CHAMBERS, J. — Public drinking water quality is highly regulated by the United States and Washington State governments. Extensive regulations dictate what may and may not appear in the water. But public drinking water is also, intrinsically, a matter of local concern and in this state is largely provided at the local level by municipalities and local water districts.

¶2 The city of Port Angeles operates a municipal water system. In 2003, the Port Angeles City Council voted to fluoridate its city's water supply. In 2006, the petitioners before us sought to repeal that decision through two initiatives. The city and the Washington Dental Service Foundation (Foundation) (which funded the fluoridation system) contend the initiatives are beyond the scope of the local initiative power because, among other things, the subject matter of the initiatives is administrative in nature. We agree and affirm the Court of Appeals on somewhat different grounds.

## FACTUAL BACKGROUND

¶3 The city of Port Angeles, a noncharter code city, has been running its own municipal water system since 1924. Around 2000, the board of commissioners of the nearby Olympic Medical Center suggested that the city fluoridate its water supply. Two years later, "[a] coalition of medical, dental, and health care professionals" followed up on the suggestion by approaching the utility advisory committee, encouraging it to consider fluoridation. Wash. Dental Serv. Found. Clerk's Papers at 237. Around that time, the Foundation offered a grant to the city to build a fluoridation system. On February 18, 2003, after some study, the city council held a very long public meeting on the subject and passed a motion approving fluoridation of the water system.

¶4 On March 1, 2005, the city council approved a contract with the Foundation. Under that contract, the Foundation agreed to pay for the design, construction, and installation of a fluoridation system and transfer it to the city. The city agreed to fluoridate the public water supply for at least 10 years and to reimburse the Foundation its costs (up to $433,000) if it failed to do so. On May 18, 2005, the system was completed and transferred to the city. The next year, and apparently for the first time, the city council amended the city code to allow for citizen initiatives and referendums under RCW 35A.11.080-.100. PORT ANGELES MUNICIPAL CODE (PAMC) 1.14.010 (codifying Ordinance 3252 (July 14, 2006)).

¶5 Some residents resisted the move to fluoridate. One group sued on environmental grounds and lost. *Clallam County Citizens for Safe Drinking Water v. City of Port Angeles*, 137 Wn. App. 214, 227, 151 P.3d 1079 (2007). On September 8 and 12, 2006, two months after the city council amended the municipal code to allow for initiatives and referendums, Our Water—Our Choice (OWOC) and Protect Our Waters (POW) filed separate initiatives seeking to stop fluoridation of Port Angeles's public waters. OWOC's initiative, the "Medical Independence Act," would declare that the right to public water is a property right that has been taken without compensation due to fluoridation. Appellant's Clerk's Papers (ACP) at 11. That initiative would make it unlawful to "put any product, substance, or chemical in public water supplies for the purpose of treating physical or mental disease or affecting the structure or functions of the body of any person." *Id.* POW's initiative, the "Water Additives Safety Act," would make it a crime to "add any substance to a public drinking water supply with the intent to treat or affect the physical or mental functions of the body of any person or which is intended to act as a medication for humans," with exceptions for "substances which are added to treat water to make water safe or potable" and substances approved by the Food and Drug Administration (FDA) for use in public water systems. *Id.* at 13.[1] The initiative also would require the manufacturer, producer, or supplier of any additives to provide a "certificate of independent analysis" showing purity with each shipment. *Id.*

¶6 The city council declined to either enact the initiatives or refer them to the ballot. Instead, the council sought declaratory judgment that the initiatives were beyond the

---

[1] The FDA exception is essentially meaningless since the Environmental Protection Agency, not the FDA, regulates public drinking water systems. *See* FOOD & DRUG ADMIN., U.S. DEP'T OF HEALTH & HUMAN SERVS., MEMORANDUM OF UNDERSTANDING BETWEEN THE ENVIRONMENTAL PROTECTION AGENCY & THE FOOD AND DRUG ADMINISTRATION, MOU 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 (June 22, 1979), *available at* http://www.fda.gov/AboutFDA/PartnershipsCollaborations/MemorandaofUnderstandingMOUs/DomesticMOUs/ucm116216.htm.

scope of the local initiative power because they concerned administrative matters; because the Washington State Legislature had vested the responsibility to run the water system to the council, not the city; and because the initiatives were substantively invalid. The Foundation intervened on behalf of the city. The initiative sponsors filed for a writ of mandamus directing the city clerk to forward the petitions to the county auditor for validation, among other things. The parties agreed to allow the auditor to count the signatures, and the auditor found that enough had been gathered to qualify the initiatives for the ballot. The trial court consolidated the cases and found for the city on all issues. After this court declined direct review, the Court of Appeals affirmed. *City of Port Angeles v. Our Water-Our Choice*, 145 Wn. App. 869, 188 P.3d 533 (2008). The challengers again petitioned this court for review, which we granted. 165 Wn.2d 1053, 208 P.3d 556 (2009).

## ANALYSIS

■■ ¶7 We must decide whether these initiatives are beyond the scope of local initiative power and therefore are subject to preelection attack. These are questions of law and our review is de novo. *1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 172, 149 P.3d 616 (2006) (citing *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)). Generally, judicial preelection review of initiatives and referendums is disfavored. *Coppernoll v. Reed*, 155 Wn.2d 290, 301, 119 P.3d 318 (2005). However, courts will review local initiatives and referendums to determine, notably, whether "the proposed law is beyond the scope of the initiative power." *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 746, 620 P.2d 82 (1980) (citing *Leonard v. City of Bothell*, 87 Wn.2d 847, 557 P.2d 1306 (1976)).

### A. THE SCOPE OF LOCAL INITIATIVE POWER

■■ ¶8 With Amendment 7 to the Washington Constitution, the people secured for themselves the right to

legislate directly. WASH. CONST. art. II, § 1; *Ruano v. Spellman*, 81 Wn.2d 820, 823, 505 P.2d 447 (1973). However, Amendment 7 does not apply to municipal governments, which under our constitution are not fully sovereign. WASH. CONST. art. II, § 1; *1000 Friends*, 159 Wn.2d at 167; *Lauterbach v. City of Centralia*, 49 Wn.2d 550, 554, 304 P.2d 656 (1956) ("A municipal corporation is a body politic established by law as an agency of the state—partly to assist in the civil government of the county, but chiefly to regulate and administer the local and internal affairs of the incorporated city, town, or district." (citing *Columbia Irrigation Dist. v. Benton County*, 149 Wash. 234, 235, 270 P. 813 (1928))). While our constitution does not extend the initiative and referendum power to cities, our legislature has authorized, but has not required, noncharter code cities like Port Angeles to enact enabling legislation authorizing referendums and initiatives. RCW 35A.11.080.[2] But neither article II, section 1 nor RCW 35A.11.080 encompasses the power to *administer* the law, and administrative matters, particularly local administrative matters, are not subject to initiative or referendum. *Ruano*, 81 Wn.2d at 823 (citing *Ford v. Logan*, 79 Wn.2d 147, 154, 483 P.2d 1247 (1971)).

## B. WATER QUALITY REGULATION BACKGROUND

¶9 The United States Safe Drinking Water Act (SDWA), Pub. L. No. 93-523, § 2(a), 88 Stat. 1660, 1661 (1974), regulates all drinking water systems in the United States. States are permitted to provide greater protection than the minimums established by the SDWA. 42 U.S.C.

---

[2] The qualified electors or legislative body of a noncharter code city may provide for the exercise in their city of the powers of initiative and referendum, upon electing so to do in the manner provided for changing the classification of a city or town in RCW 35A.02.020, 35A.02.025, 35A.02.030, and 35A.02.035, as now or hereafter amended.

The exercise of such powers may be restricted or abandoned upon electing so to do in the manner provided for abandoning the plan of government of a noncharter code city in RCW 35A.06.030, 35A.06.040, 35A.06.050, and 35A.06.060, as now or hereafter amended.

RCW 35A.11.080.

§ 300g-2(a)(1). The Washington State Legislature vested the Department of Health with the power and duty to regulate the health and safety of drinking water. RCW 43.20.050(2)(a).[3] The department has responded with detailed regulations governing public water systems. Ch. 246-290 WAC. This chapter includes a specific regulation on fluoridation, WAC 246-290-460. Pursuant to the SDWA and the regulations promulgated by Washington's Department of Health, there are approximately 40 chemicals that may be added to public water supplies. Mostly these chemicals are used to "treat water and make it safe, palatable and aesthetically acceptable." ACP at 207 (Decl. Clallam County Health Officer). Fluoride is one of the permitted chemicals. WAC 246-290-460. While class A municipal water suppliers like Port Angeles are not required to fluoridate, if they choose to, the rule sets quantities and monitoring required. WAC 246-290-020 through -460.

¶10 Port Angeles has operated its own municipal water system for nearly 100 years, and its own municipal code includes a fairly detailed regulatory scheme. Chs. 13.24-.48 PAMC (regulating public water system). It appears that the city has not incorporated a water and sewer district to manage city waters. There is no mention of it in the city code. *See also Washington Water and Sewer Districts Listed by County*, Mun. Research Servs. Ctr. of Wash., http://www.mrsc.org/Subjects/governance/spd/SPDWatSew. aspx (last visited Sept. 16, 2010) (listing water districts). If it had, it is unlikely this case would have come before

---

[3] That statute currently provides in part:

(2) In order to protect public health, the state board of health shall:

(a) Adopt rules for group A public water systems, as defined in RCW 70.119A.020, necessary to assure safe and reliable public drinking water and to protect the public health. Such rules shall establish requirements regarding:

(i) The design and construction of public water system facilities, including proper sizing of pipes and storage for the number and type of customers;

(ii) Drinking water quality standards, monitoring requirements, and laboratory certification requirements;

(iii) Public water system management and reporting requirements;

(iv) Public water system planning and emergency response requirements.

RCW 43.20.050.

us. The legislature has explicitly vested the power to decide whether or not to fluoridate in the board of commissioners of a water district. RCW 57.08.012. Nothing in chapter 57.08 RCW creates the power of initiative or referendum to check such board decisions. The grant of power to water districts is not subject to local oversight, even by local boards of health. *Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health*, 151 Wn.2d 428, 434, 90 P.3d 37 (2004).

C. Administrative vs. Legislative Action

 ¶11 Municipal legislative bodies regularly perform both legislative and administrative functions. The trial court found that these initiatives were administrative in nature and thus not the proper subject for initiatives. *See Ruano*, 81 Wn.2d at 823. Generally speaking, a local government action is administrative if it furthers (or hinders) a plan the local government or some power superior to it has previously adopted. *Id.* at 823-24; *Heider v. City of Seattle*, 100 Wn.2d 874, 876, 675 P.2d 597 (1984). Discerning whether a proposed initiative is administrative or legislative in nature can be difficult. Justice Brachtenbach suggested that at least for the case before the court at the time, the appropriate question was "whether the proposition is one to make new law or declare a new policy, or merely to carry out and execute law or policy already in existence." *Ruano*, 81 Wn.2d at 823 (citing *People v. City of Centralia*, 1 Ill. App. 2d 228, 117 N.E.2d 410 (1953)).

¶12 *Ruano* concerned the King County stadium. After the county council had voted to build it and the bonds had been sold to finance it, an initiative was filed to prevent construction. *Id.* at 822, 825. Noting that the original ordinance authorizing the project was legislative in nature and that no referendum had been proposed to repeal it, the court found that the later initiative attacked only administrative decisions that were beyond the scope of the initia-

tive power. *Id.* at 824-25.[4] Similarly, this court held that the Seattle City Council acted administratively, and thus was not subject to referendum, when it passed an ordinance changing the name of Empire Way to Martin Luther King Jr. Way. In a brief opinion, this court dismissed a proposed referendum[5] repealing the name change as outside the scope of the referendum power. After again acknowledging there were several ways of determining whether an action was legislative or administrative, we said:

> The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.
>
> 5 E[UGENE] McQUILLIN, [THE LAW OF MUNICIPAL CORPORATIONS] § 16.55, at 194 [(3d rev. ed.)]; *Durocher v. King Cy.*, 80 Wn.2d 139, 152-53, 492 P.2d 547 (1972); *Ruano v. Spellman, supra* at 823.
>
> . . . .
>
> . . . The name change ordinance merely amended Seattle's comprehensive street names ordinance. Therefore, the ordinance should be characterized as administrative, since it was enacted "[pursuant to] a plan already adopted by the legislative body itself . . . ."

*Heider,* 100 Wn.2d at 876 (some alterations in original) (quoting *Citizens for Financially Responsibile Gov't v. City of Spokane,* 99 Wn.2d 339, 347, 662 P.2d 845 (1983)); *accord Leonard,* 87 Wn.2d at 850, 852 (finding the decision to rezone property was administrative and not subject to referendum).

---

[4] In *Ruano,* the court noted that voters of King County approved the construction of the stadium in 1968. *Ruano,* 81 Wn.2d at 821. The initiative to block the stadium was filed three years later. *Id.* at 822. That timing played some role in the court's analysis. *Id.* at 824-25. Because the right of initiative and referendum were not available in Port Angeles until mere months before appellants filed their initiatives, we do not reach the timeliness of their challenges.

[5] We apply the same analysis to challenges to local initiatives and referendums. *1000 Friends,* 159 Wn.2d at 185 n.10 (citing *State ex rel. Guthrie v. City of Richland,* 80 Wn.2d 382, 387, 386, 494 P.2d 990 (1972)).

## D. PORT ANGELES'S FLUORIDATION PLAN

¶13 The city and the Foundation argue that the city council's decision to fluoridate the water was made pursuant to both the city's existing water management plan and detailed state administrative regulations governing water, and thus was as administrative as Seattle's decision to rename streets. Both courts below agreed.

¶14 OWOC and POW respond by arguing that the initiatives are essentially legislative because the decision to fluoridate was new.[6] We need not decide whether that in itself is sufficient to show that a plan was administrative or legislative because the record does not support the contention that the fluoridation plan was new at the time the initiatives were filed. The initiatives were filed three and one-half years after the city council approved fluoridating and one and one-half years after the city council entered into a contract to build and install the system.

¶15 OWOC and POW also cite to a California case that found the decision to fluoridate was intrinsically legislative. *Hughes v. City of Lincoln*, 232 Cal. App. 2d 741, 747, 43 Cal. Rptr. 306 (1965) ("Intrinsically therefore, as well as in its police power origin, the decision to fluoridate is legislative rather than administrative."). But they make no attempt to show that the 1965 California Court of Appeal made that decision against a substantially similar statutory and regulatory scheme that exists in Washington today. As described above, water quality in the United States, and in Washington State specifically, is highly regulated. The Department of Health regulations permit water systems to administratively adopt water fluoridation programs. WAC 246-290-460 (implicitly acknowledging the power of water purveyors to fluoridate and regulating implementation). There is a find-

---

[6] The petitioners also argue that the decision was legislative because there was no prior law regarding medicines in public waters. However, the trial court did not find that fluoride was a medicine, and OWOC and POW did not assign error to that lack of a finding. The factual predicate for this argument is not provided by the record before us, and we do not reach it.

ing in a related case that Port Angeles's decision to fluoridate the water was made pursuant to the Department of Health's program. *Clallam County Citizens*, 137 Wn. App. at 220. POW and OWOC have not shown that the California system was similar to our own such that *Hughes* is helpful.

¶16 OWOC and POW also contend that the court should consider only the " 'fundamental and overriding purpose' " of the initiatives in determining whether they are administrative or legislative, relying on *Coppernoll*, 155 Wn.2d at 302. Their reliance on *Coppernoll* is not well taken. As we explained in *Futurewise*, "[i]f an initiative otherwise meets procedural requirements, *is legislative in nature*, and its 'fundamental and overriding purpose' is within the State's broad power to enact, it is not subject to preelection review." *Futurewise v. Reed*, 161 Wn.2d 407, 411, 166 P.3d 708 (2007) (emphasis added) (quoting *Coppernoll*, 155 Wn.2d at 302-03). *Coppernoll* concerned a largely substantive preelection challenge to a statewide initiative that would have, among other things, restricted noneconomic damages in medical malpractice action to $350,000 per claimant. *Coppernoll*, 155 Wn.2d at 293-95. *Coppernoll* did not hold (or even consider, given the questions that were presented) that court review of whether a local initiative was administrative or legislative was limited to the "fundamental and overriding purpose" of an initiative. Instead, it assumed the subject matter was legislative in nature and the court used the term " 'fundamental and overriding purpose' " as a razor to cut away untimely substantive constitutional challenges to the statewide initiative's validity. *Id.* at 303.

¶17 We agree with the city and the Foundation that these initiatives are administrative in nature. They explicitly seek to administer the details of the city's existing water system. The legislature gave the Department of Health the authority and responsibility to set maximum contaminant levels in drinking water based on the best available scientific information, which it has done. RCW 70.142.010; chs. 246-290 through -296 WAC. Only local health departments of counties with at least 125,000 in

population may set stricter standards, again, based on the best available scientific information. RCW 70.142.040. The Medical Independence Act explicitly seeks to interfere with this existing system by limiting the amount of fluoride in the public water system. Similarly, the Water Additives Safety Act states, among other things, that "it is prohibited to add to a public water supply any substance which is contaminated with filth," with "contaminated with filth" defined as "a term applicable to contaminants taken singly or as a group which are present in a product intended to be added to drinking water and which are present in quantities which would, when dispensed at the manufacturer's Maximum Use Level, allow the final consumer-ready product to exceed for one or more contaminants the Maximum Contaminant Level Goals ('MCLGs') as published by the U.S. Environmental Protection Agency." ACP at 13. This directly impacts existing water regulations promulgated by state and federal agencies. The water additives initiative also seeks to set limits on the amount of fluoride that can be present in the water and imports testing and documentation standards from health regulations governing pharmaceuticals into the public water regime. *Id.* (citing WAC 246-895-070(9)). These are not details of " 'a new policy or plan,' " indicative of a legislative act; these are modifications of " 'a plan already adopted by the legislative body itself, or some power superior to it,' " indicative of an administrative act. *Heider*, 100 Wn.2d at 876 (internal quotation marks omitted) (quoting *Citizens for Financially Responsible Gov't*, 99 Wn.2d at 347).[7]

---

[7] The Court of Appeals struck the initiatives on the alternative grounds that the state legislature intended the city's legislative body, rather than the city as a whole, to manage its water system. While we do not reach this issue, we note that there may be language in the opinion below that could be misunderstood. The Court of Appeals began its analysis by quoting a statutory general grant of power to code city legislative bodies:

The trial court correctly determined that the initiative power does not extend to regulating public water systems because the legislature granted city legislative bodies the power to operate water utilities. *See* RCW 35A.11.020 ("The legislative body of each code city shall have all powers [necessary for]

# CONCLUSION

¶18 We hold that the initiatives before us are administrative in nature in that they attempt to interfere with and effectively reverse the implementation of Port Angeles's water fluoridation program first adopted in 2003 and further implemented in 2005 pursuant to an existing city regulatory system and a regulatory system established by the Washington State Legislature and the Department of Health. We do not reach whether the legislature vested the authority to operate the water system to the city legislative body as opposed to the city as a corporate whole or whether these initiatives are substantively invalid.

---

operating and supplying of utilities and municipal services commonly or conveniently rendered by cities or towns.").

145 Wn. App. at 880-81 (alteration in original). While the citation is correct, read out of context, it could have unintended consequences. Given that the same chapter of the RCW specifically authorizes noncharter code cities to "provide for the exercise ... of the powers of initiative and referendum, upon electing to do so," RCW 35A.11.080, reading RCW 35A.11.020 expansively strains the statutory fabric. In our view, RCW 35A.11.020 grants code cities broad, though specific, powers notwithstanding "Dillon's Rule" (which limits municipal powers to those specifically granted or necessarily implied) and does not necessarily speak to whether the state legislature intended to grant those powers only to its municipal counterpart. *See* Michael Monroe Kellogg Sebree, Comment, *One Century of Constitutional Home Rule: A Progress Report?*, 64 WASH. L. REV. 155, 158 (1989) (limiting local governments to "those powers expressly conferred by state constitutional provisions, state statutes, and, where applicable, the home rule charter; those powers necessarily or fairly implied in, or incident to, the powers expressly granted; and those powers essential to the declared objects and purposes of the municipality or quasi-corporation" (citing 1 JOHN F. DILLON, COMMENTARIES ON THE LAW OF MUNICIPAL CORPORATIONS § 237, at 448-50 (5th ed. 1911))). Otherwise, RCW 35A.11.080 is largely a nullity. *See 1000 Friends*, 159 Wn.2d at 182 (we look to the entirety of the statutory scheme to determine whether local initiatives and referendums are consistent). Second, again, the state legislature charged the Department of Health with the power and responsibility to regulate the health and safety of drinking water, and the department has promulgated regulations. RCW 43.20.050(2)(a). The department has responded with detailed regulations. Ch. 246-290 WAC. The task of complying with detailed regulations is generally inconsistent with a general grant of authority to the municipal corporate body to make these decisions. *See generally 1000 Friends*, 159 Wn.2d 165.

We respectfully disagree with our dissenting colleagues that reaching this issue is "essential to the analysis." Dissent at 20. We agree that some words are appropriate. However, whether the state legislature has delegated to the local legislative body, or the local corporate body, the power and responsibility to act is a completely separate question than whether a particular ordinance promulgates new policy, or implements existing policy.

¶19 We grant the respondents' motion to strike[8] and deny all other motions. We affirm the courts below.

MADSEN, C.J., and C. JOHNSON, OWENS, and STEPHENS, JJ., concur.

¶20 SANDERS, J. (dissenting) — The Washington Constitution provides, "All political power is inherent in the people, and governments derive their just powers from the consent of the governed . . . ." CONST. art. I, § 1. The power of initiative, the first power reserved by the people of Washington, remains a powerful symbol of the importance this State places on the ability of the people to check the other branches of government. *Coppernoll v. Reed*, 155 Wn.2d 290, 296-97, 119 P.3d 318 (2005) (citing CONST. art. II, § 1(a)). It must be vigilantly protected. *Id.* at 297. Because the majority today diminishes our state's forthright commitment to this core democratic principle, I dissent.

¶21 It has been a long-standing rule that courts refrain from inquiring into the validity of a preelection initiative. *Id.* (citing *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 745, 620 P.2d 82 (1980)). Our preelection review is appropriate only under narrowly prescribed exceptions. *Id.* One exception is when the initiative exceeds the scope of initiative power. *Id.* at 301. An initiative is beyond the scope of initiative power when it is (1) administrative, not legislative, in character and (2) the

---

[8] The respondents move to strike large portions of both the amicus brief filed in support of the petitioners and the petitioners' answer to that amicus brief as beyond the scope of review. These motions are granted. The petitioners' supporting amicus also seeks belated leave to file its brief on behalf of several entities that either did not seek or were denied leave to file an amicus brief in this case. The motion is denied. The respondents have moved for sanctions under RAP 18.9(a) against the amicus's attorney for disregarding the order granting permission to file. While sanctions may be authorized, we do not feel they are warranted. The petitioners seek to strike the restatement of issues presented in the respondents' supplemental brief. The motion is denied. The petitioners also ask this court to make a finding of fact that more than one water system serves Port Angeles. But while there is evidence in the record supporting this, the trial court declined to make such a holding. The petitioners have given us no reason to disturb the trial court's judgment on this matter.

initiative would enact a law beyond the jurisdiction's power to enact. *See Phila. II v. Gregoire*, 128 Wn.2d 707, 718-19, 911 P.2d 389 (1996).

¶22 An initiative is legislative in character when it makes new law or declares a new policy. *Seattle Bldg. & Constr. Trades Council*, 94 Wn.2d at 748 (citing 5 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 16.55 (3d rev. ed. 1969)). Conversely, administrative initiatives merely carry out laws or policies already in existence and are not within the scope of initiative power. *See id.* The majority asserts the initiatives here[9] are administrative because the city of Port Angeles (the City) implemented its water fluoridation program pursuant to an existing regulatory system established by the Washington State Legislature and the Department of Health. Majority at 13-14. This view oversimplifies the analysis. Although the Department of Health does regulate water fluoridation levels, class A municipal water suppliers like Port Angeles are not *required* to fluoridate. *See* WAC 246-290-460(2). The decision to fluoridate did not carry out a state mandate or preexisting policy. *See Seattle Bldg. & Constr. Trades Council*, 94 Wn.2d at 748 " '[An initiative] is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.' " (internal quotation marks omitted) (quoting 5 McQUILLIN, *supra*, § 16.55, at 214). Instead, it introduced a new policy to fluoridate the City's water. The preexisting regulations merely dictate safe levels of fluoride; they do not determine whether fluoride should be added in the first place. This threshold question falls within the legislative domain.

¶23 The majority claims the initiatives do not constitute new policies or plans because they seek to prohibit or limit the amount of fluoride or contaminant levels in drinking water—which the majority believes is already regulated by the Department of Health. *See* majority at 8-9; *see also* WAC

---

[9] Entitled the "Medical Independence Act," sponsored by petitioner Our Water-Our Choice (Clerk's Papers (CP) at 220-21), and the "Water Additives Safety Act," sponsored by petitioner Protect Our Waters (CP at 222-23).

246-290-460. Furthermore, the majority contends the initiatives seek to administer details of the City's water system, which has existed since 1924.

¶24 The majority views the issue through too wide a lens. The initiatives here seek to create new law in Port Angeles. Although the water system has existed since 1924, the provisions of the Port Angeles Municipal Code that regulate water services carry *no* mention of chemical additive regulation, including optional[10] additives such as fluoride. *See* chs. 13.24-.48 PORT ANGELES MUNICIPAL CODE.[11] Accordingly these initiatives would not merely administer details of the City's water system.

¶25 While the Department of Health regulations do regulate fluoridation and a variety of chemical additives, the initiatives here would substantially expand the scope of regulated chemicals. This substantial expansion constitutes new law, which is legislative in character. *See* WAC 246-290-310 (listing maximum contaminant levels of chemicals for water samples). We have addressed an analogous issue before. *See Citizens for Financially Responsible Gov't v. City of Spokane*, 99 Wn.2d 339, 662 P.2d 845 (1983). In *Citizens*, we found an ordinance that expanded a licensing tax from utility companies to all businesses generally to be legislative in character. Like the licensing tax, the initiatives here seek to expand categories that would be regulated. The initiatives seek to regulate *all* public sources of water supply, not just the City's municipal water supply. There is no current ordinance regulating the purity of all public water systems in the City. *See* Appellants' Opening Br. at 24.

¶26 Furthermore, the Department of Health regulations address the health and safety of drinking water. *See* WAC

---

[10] I use the term "optional" to mean chemicals added for purposes other than ensuring safe drinking water.

[11] For example, the chapters cited regulate "Water Service Connection Charges" (ch. 13.32 Port Angeles Municipal Code); "Water Service Turnons and Turnoffs" (ch. 13.36 Port Angeles Municipal Code); "Water Rates" (ch. 13.44 Port Angeles Municipal Code), etc. Nothing in these chapters regulates potability, chemical contaminants, or fluoride.

246-290-001(2)(b).[12] The proposed initiatives do not seek to ensure the safety of drinking water, but rather to prohibit or limit additives for reasons unrelated to the water quality itself.[13] Specifically the initiatives would ban certain optional additives, such as fluoride, which has been shown to prevent dental disease.[14] These new objectives address a wholly different matter than the preexisting WAC regulations. The current state regulations ensure that the water is safe to drink. These initiatives, in turn, aim to prevent the addition of optional additives, which have nothing to do with water drinkability. They do not attempt to interfere with the current systems set in place by the City and the Department of Health. Accordingly the initiatives are legislative, not administrative, in nature.

¶27 Because the majority holds the initiatives are administrative in nature and thus determinative of the case, it does not reach the second issue of whether the initiative would enact a law within the jurisdiction's power to enact. Because I would hold the initiatives are legislative, however, I address the issue briefly.

¶28 The Court of Appeals noted that an initiative is generally beyond the scope of initiative power if the initiative involves powers granted by the legislature to the governing body of the City, rather than to the City itself. *City of Port Angeles v. Our Water-Our Choice*, 145 Wn. App. 869, 881, 188 P.3d 533 (2008). However, it held that RCW

---

[12] "The rules of this chapter are specifically designed to ensure: . . . [p]rovision of safe and high quality drinking water in a reliable manner and in a quantity suitable for intended use."

[13] The Water Additives Safety Act states:

This ordinance does not regulate chemicals added to water to make water safe or potable.

. . . .

This ordinance requires that any substances which are added with the intention of treating *people*, not the *water*, must meet existing health-based standards . . . .

CP at 222-23 (emphasis added).

[14] Respondents have conceded that the decision to fluoridate was spurred by local health care professionals who thought fluoridation would produce a measurable benefit for a significant portion of the population. *See* Br. of Resp'ts at 7.

35A.11.020 granted exclusive authority to the city council to operate and regulate a municipal water system and, therefore, in its opinion "[t]his delegation placed the operation of a municipal water system beyond the initiative power." *Id.* at 881.

¶29 This interpretation is erroneous; the statute is a general grant of authority but, as is clear from the text, the exercise of that power is clearly *permissive*.[15] Under the Court of Appeals' interpretation, *any* issues included after the language "by way of illustration," including utilities, are naturally precluded from initiative powers. This interpretation is not supported by the text of the statute. Only when the legislature *clearly* delegates power to a local legislative body alone, as opposed to the city as a whole, will initiatives that attempt to modify that power be invalid. *See 1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 173-74, 149 P.3d 616 (2006). RCW 35A.11.020 uses the word "may" in describing the power exercised by a city council over utilities; there is no clear delegation of power solely to the city council. A proper reading of RCW 35A.11.020 would be that the legislative body or some other law-making body may exercise power over its utilities.

¶30 The majority does not reach the issue of whether the legislature delegated to the city's legislative body the decision to fluoridate. *See* majority at 14 n.7. However, it is essential to the analysis. "Not only must the proposed initiative be legislative in nature, but it must be within the authority of the jurisdiction passing the measure." *Phila. II*, 128 Wn.2d at 719.

¶31 The Court of Appeals opinion below broadly suggests citizen initiatives cannot touch city council decisions when the legislature has granted power to a local legislative body instead of the city as a whole. *Our Water-Our Choice*, 145

---

[15] RCW 35A.11.020 states, "The legislative body of each code city shall have all powers possible . . . . By way of *illustration* and not in limitation, such powers *may* be exercised . . . , including operating and supplying of utilities and municipal services commonly or conveniently rendered by cities or towns." (Emphasis added.)

Wn. App. at 880-81 (citing *1000 Friends*, 159 Wn.2d at 173-74; *Whatcom County v. Brisbane*, 125 Wn.2d 345, 350, 884 P.2d 1326 (1994); *Lince v. City of Bremerton*, 25 Wn. App. 309, 312-13, 607 P.2d 329 (1980). But *1000 Friends* and its brethren demand this result only if the legislature did not also contemplate the use of local referenda within the same statutory chapter. For example, the statutory scheme in *1000 Friends* did not expressly allow for initiative and referendum.[16] But here the legislature's intent to authorize citizen legislation, as expressed in RCW 35A.11.080, is clear. RCW 35A.11.080 provides, "The qualified electors or legislative body of a noncharter code city may provide for the exercise in their city of the powers of initiative and referendum . . . ." Port Angeles, in turn, accepted the legislature's invitation to provide to its citizens the powers of initiative and referendum. *See* Port Angeles Ordinance 3252 (2006), *available at* http://65.243.149.132/Weblink/ DocView.aspx?id=16649 (last visited Sept. 17, 2010). Statutory delegation of authority to the Port Angeles City Council cannot preempt citizens' initiative rights when the same chapter also expressly authorizes those rights.

¶32 This is borne out in our case law. The Court of Appeals applied the first part of the holding in *1000 Friends* (i.e., that delegation of control to the city council superseded citizen initiative) while, at the same time, improperly overlooking the implicit second part of the holding (i.e., that citizens can modify by initiative when the legislature contemplated the use of local initiatives and referenda). In *1000 Friends* we stated that "we considered the absence of any mention of referenda in the extensive and detailed [statutory scheme], and concluded that absence was strong evidence of a legislative desire to vest the power and responsibility in the local legislative authority." 159 Wn.2d at 176 (citing *Brisbane*, 125 Wn.2d at 351-52). But as noted above, the statute here *does* contemplate the initiative and referendum power. After granting permissive power to local

---

[16] *1000 Friends* concerned the Growth Management Act, chapter 36.70A RCW.

legislative bodies in RCW 35A.11.020, the legislature then specifically considered and approved the use of citizen legislation in a subsequent section of the same chapter. *See* RCW 35A.11.080. This situation is the opposite of that discussed in *1000 Friends*. Here we have an explicit grant of referendum and initiative power. This distinction compels us to find the fluoridation decision subject to initiative. The initiatives here fell within the authority of the City's legislative body.

¶33 Washington State respects the people's right to govern their own affairs. Without a robust right of initiative, the citizens of Port Angeles are without recourse in determining what types of additives the City pumps into or withholds from their drinking water. The initiatives propose new policy regarding chemical additives in the water; these matters have not been satisfactorily addressed by either the Department of Health or the Port Angeles Municipal Code. These legislative initiatives, which would greatly expand the range of substances and parties regulated, are not beyond the scope of initiative power. Accordingly, they are not subject to preelection review. We must allow them to proceed to the ballot.

¶34 Because the right of initiative must be preserved here, I dissent.

ALEXANDER, FAIRHURST, and J.M. JOHNSON, JJ., concur with SANDERS, J.

Reconsideration denied December 22, 2010.